## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br><br>MOBILE COUNTY SHERIFF'S OFFICE and<br>MOBILE COUNTY SHERIFF SAM COCHRAN<br>(in his official capacity),<br>            Defendants. | Civil Action No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Plaintiff United States of America ("United States"), alleges:

1.     This civil action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").  As set forth herein, the United States alleges that Defendants, the Mobile County Sheriff's Office ("the MCSO") and Sheriff Sam Cochran (collectively "Defendants"), discriminated against current and former female corrections officers and all other similarly situated female employees on the basis of sex, in violation of Title VII, by subjecting them to a sexually hostile work environment.  In performing their jobs, the current and former female corrections officers and similarly situated female employees have been and continue to be frequently subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at female employees.  Defendants have failed to take prompt and effective action to remedy this harassing conduct.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C.

§ 2000e-5(f) and 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and under 28

U.S.C. § 1391(b) because Defendants are located in this judicial district and the employment

practices alleged to be unlawful occurred in this district.

4.      On October 26, 2015, the Equal Employment Opportunity Commission ("EEOC")

received timely charges of discrimination filed by Michale Burrell (EEOC Charge No. 425-2016-

00129), Manana Evans (EEOC Charge No. 425-2016-00141), Ella Finklea (EEOC Charge No.

425-2016-00099), Angela Garrett (EEOC Charge No. 425-2016-00098), Edwina Golston (EEOC

Charge No. 425-2016-00102), Frankietta Horn (EEOC Charge No. 425-2016-00115), Mary James

(EEOC Charge No. 425-2016-00101), Chasity Johnson (EEOC Charge No. 425-2016-00091),

Lawanna Johnson (EEOC Charge No. 425-2016-00093), Nina Myrick (EEOC Charge No. 425-

2016-00094), Christina Norwood (EEOC Charge No. 425-2016-00095), and Lillian Sanders

(EEOC Charge No. 425-2016-00096) (collectively, "Charging Parties").  The Charging Parties,

current and former corrections officers employed by Defendants, alleged that they were subjected

to an unlawful sexually hostile work environment.

5.      Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the

charges filed by the Charging Parties.

6.      On August 8, 2016, the EEOC notified the MCSO and the Charging Parties that it found

reasonable cause to believe that the MCSO violated Title VII by subjecting the Charging Parties

and similarly situated female employees to a sexually hostile work environment.

7.      On October 19, 2016, the EEOC notified the MCSO and the Charging Parties that efforts to conciliate the charges were unsuccessful, and thereafter referred the charges to the Department of Justice.

8.      All conditions precedent to the filing of suit have been satisfied.

## PARTIES

9.      Plaintiff is the United States of America.

10.     Defendant Mobile County Sheriff's Office is a corporate, governmental body created pursuant to the laws of the State of Alabama, and is located within this judicial district.

11.     Defendant Mobile County Sheriff Sam Cochran (in his official capacity) is the chief law enforcement officer in the MCSO.  He is responsible for the operations of the MCSO and the supervision of its personnel and the inmates housed in the Mobile Metro Jail ("Jail").

12.     The MCSO is a law enforcement agency located in Mobile, Alabama.  It is the second-largest sheriff's office in the State of Alabama with a staff of over 600 employees working in four divisions: Administrative Services, Field Operations, Support Services, and Correction.

13.     The Correction Division operates the Jail, which has an average daily population of approximately 1,500 inmates.  The Jail houses inmates for both the County and City of Mobile.

14.     The MCSO is a "person" within the meaning of 42 U.S.C. § 2000e(a), and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

15.     Sheriff Cochran is a "person" within the meaning of 42 U.S.C. § 2000e(a), and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

### A. The Mobile Metro Jail

16.     Of the approximately ninety non-supervisory corrections officers employed at the Jail, approximately sixty-six (over 73%) are women.

17.     One of the job responsibilities of corrections officers at the Jail is to guard inmates throughout the Jail facilities, including in the housing units.  When assigned to the Jail's housing units, the Charging Parties have direct contact with inmates.

18.     Corrections officers at the Jail also perform a comprehensive range of additional job responsibilities necessary to house inmates, including but not limited to, receiving and processing inmates into the jail facility to include fingerprinting and maintaining accurate records; escorting inmates to and from different destinations; checking the placement of inmates and their condition when necessary; supervising feeding and cleaning activities; escorting legal authorities to and from the jail facility to talk with clients; escorting inmates to and from court; typing reports on inmates who become diseased while incarcerated; preparing reports on forcible escapes and escape attempts; receiving shipments of food products, paper, and sanitary articles; making periodic counts of inmates and periodic checks of all areas to avoid contact of outsiders with inmates and to prevent escape attempts; conducting periodic inspections of cells; transporting inmates to various appointments using automobiles; controlling inmates through the use of physical restraint when necessary; instructing inmates regarding rules and regulations of the facility; communicating with family members, attorneys, and other visitors to facility; and recommending discipline for inmates.

19.     Corrections officers at the Jail perform their duties under the general supervision of a corrections sergeant or other superior.

20.     Corrections officers may be assigned to work either a rotating or permanent shift and may be required to work in excess of ten hours of overtime per month.

21.     There are six housing units in the Jail to which corrections officers may be assigned to guard inmates, including a barracks building for low custody-level inmates.

22.     Inmates are on lockdown in their cells in the housing units from 11:00 am to 2:00 pm and 6:00 pm to 8:00 am each day.

23.     Most of the Jail's housing units are designed in a half-circle shape that consist of six pie-shaped wedges of inmate cells.

24.     Each wedge has an upper and lower level, a day room, eight cells in the back of the wedge (four on each level), and two showers (one on each level).  Each cell in the wedge houses up to four inmates.

25.     Each housing unit is assigned one pod officer and one floor officer at all times.

26.     The pod officer is responsible for observing inmates in the housing unit as well as answering the phone and completing paperwork, such as visitation, court, and medical lists.

27.     The pod officer sits at a raised station in the center of the flat side of the half-circle design, so that she is positioned to see inside all inmate cells.  The pod officer must remain at the pod for the duration of a shift until relieved.

28.     The floor officer is responsible for conducting inmate headcounts and visual checks of cells; checking cells for contraband; changing the TV stations; spraying the showers and toilets; answering inmate questions; serving food trays; ensuring that equipment, such as radios and tasers, is operable; and circulating in the housing units and interacting with inmates to ensure that the environment is safe.

### B. Sexual Harassment Allegations of Charging Parties and Similarly Situated Female Employees

29.     When performing their duties within the Jail, the Charging Parties and similarly situated female employees are routinely subjected to various forms of unwelcome, severe sexual harassment by male inmates.

30.     Male inmates sexually harassed the Charging Parties and similarly situated female employees through physical conduct, including exposing their genitalia and engaging in exhibitionist masturbation, also known as "gunning".

31.     Male inmates also engaged in verbal sexual harassment directed at the Charging Parties and similarly situated female employees.  This verbal harassment included:

a.  Sexual propositioning;

b.  Sexual slurs, such as: "bitch," "hoe," "good pussy," and "horse pussy";

c.  Threats of sexual violence while masturbating, such as: "I'm going to fuck you in the ass," "I'd fuck the shit out of you if I was on the street;" and "when I get out I'm going to come look for you."

d.  Sexually degrading comments, such as: "I bet your pussy gets really wet," "I want you to come sit on my face," "your pussy stinks," "you know you like this big dick," "come sit on this," "can I fuck you?" or "suck my dick"; and

e.  Demeaning comments about the anatomy of female employees, such as: "your butt's getting bigger," "your pussy is thick," and "you got that big booty and them big breasts."

32.     Inmates in regular housing units are permitted to shower each day between 8:00–11:00 AM and 2:00–6:00 PM.  Inmates using the shower in the upstairs level of the cell have a direct line of sight to the officer stationed in the pod.

33.     Female pod officers are frequently subjected to inmates opening the curtain in the top shower and masturbating toward the officers.  It is also common for inmates to take multiple showers in one day in order to masturbate at the female corrections officers.

34.     In the Jail, inmates who have been convicted and are awaiting sentencing or transport to state or federal prison; those with mental health challenges; and those requiring a maximum level of security are housed in the 1000 and 1200 housing units.

35.     Instances of sexual harassment by male inmates, who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at female corrections officers, is extremely high in the 1000 and 1200 housing units.

36.     Despite having each filed one or more disciplinary reports documenting sexual harassment against them by male inmates, and complaining to supervisors, the Charging Parties and similarly situated female employees continue to be subjected to a sexually hostile work environment.

37.     Each of the Charging Parties and similarly situated female employees have suffered damages as a direct and proximate result of the Defendants' failure to take effective corrective actions to prevent and end the sexual harassment perpetrated by male inmates.  The damages suffered by the Charging Parties and similarly situated female employees include: mental anguish, stress, anxiety, and depression; fear and other emotional distress; headaches; chest pains; insomnia and other physical symptoms; loss of sexual desire; mental anguish when going to work; burnout; and loss of sick leave when compelled to take leave in order to avoid or escape the incessant sexual harassment.

38.    Male corrections officers and employees are rarely, if ever, subjected to sexual harassment by the Jail's male inmates.

**Michale Burrell**

39.    Charging Party Michale Burrell has been employed as a corrections officer at the Jail since April 2006.  She has been assigned to work in the Jail's housing units for several years during her employment.

40.    While working in the Jail's housing units, Burrell is regularly subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

41.    When working as a pod officer, Burrell is often subjected to inmates opening the curtain while showering and looking at her as they masturbate.

42.    Burrell has routinely submitted disciplinary reports on inmates who have exposed themselves to her and masturbated at her.

43.    Burrell has been deterred from submitting a disciplinary report every time that a male inmate has masturbated at her because many of the disciplinary reports that she has submitted have not been acted upon, the inmates have been found not guilty or when inmates have been moved to administrative segregation as a form of discipline, they have returned to the general population in less than a week.

**Manana Evans**

44.    Charging Party Manana Evans began her employment as a corrections officer at the Jail in April 2012.  In addition to working shifts in the housing units, Evans worked as a medical clinic officer from March 2016 to March 2017 and as a kitchen officer from March 2017 until returning to the housing units in June 2020.

45.     As a kitchen officer, Evans supervised approximately twenty-five inmates per shift as they prepared food for the broader inmate population.  In this role, Evans was required to search the inmates before they left the kitchen to return to housing units or other areas of the Jail.

46.     These searches included a patdown of an inmate's genital area to search for food and other contraband that may have been taped to an inmate's penis.

47.     Immediately prior to being searched by Evans, inmates regularly fondled their genitalia so that they became sexually aroused when searched by Evans.  In such instances, inmates frequently made lewd comments to Evans during her searches for contraband, such as: "I'm hanging & swinging"; "You're going to find something you don't want"; or "This is the best part of the day."

48.     While working in the Jail's housing units, Evans is regularly subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

49.     Evans is most frequently subjected to inmates' exhibitionist masturbation when the inmates take showers.  Inmates often take 2-3 showers per shift and openly masturbate at Evans each time.

50.     Evans is also subjected to inmates masturbating as they sit at tables in the dayrooms, as they lay in bed during bed checks, and for prolonged periods of 10-15 minutes as they stand at toilets.

51.     Evans at times has submitted disciplinary reports when subjected to male inmates masturbating at her.

52.     Evans has been deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because her supervisory officers and/or Jail administrators have lost or ignored her disciplinary reports; released inmates who were found guilty of masturbating

at her early from administrative segregation; and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

**Ella Finklea**

53.     Charging Party Ella Finklea began her employment as a corrections officer at the Jail in July 2005.  She was promoted to the rank of corporal in or around 2014, and resigned in February 2017.

54.     While working in the Jail's housing units, Finklea was regularly subjected to sexual harassment by male inmates who exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

55.     Finklea was most often subjected to inmates opening the curtain while showering and looking at her as they masturbate.

56.     As a corrections officer, Finklea submitted over fifty disciplinary reports about this harassing conduct.

57.     Finklea was deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because supervisory officers and/or Jail administrators lost or ignored her disciplinary reports and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

**Angela Garrett**

58.     Charging Party Angela Garrett began her employment as a corrections officer at the Jail in July 2010. She has served as a control officer since October 2015.

59.     While working in the Jail's housing units, Garrett was regularly subjected to sexual harassment by male inmates who exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

60.     Garrett routinely wrote disciplinary reports on inmates who exposed themselves to her and masturbated at her.

61.     Garrett has been deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because many of the disciplinary reports that she has submitted have not been acted upon or the inmates have not been disciplined.

**Edwina Golston**

62.     Charging Party Edwina Golston began her employment as a corrections officer at the Jail in August 2012.  She was promoted to the rank of corporal in May 2017.

63.     While working in the Jail's housing units, Golston is regularly subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

64.     It is common for Golston to be subjected to inmates' exhibitionist masturbation throughout an entire shift.

65.     Inmates often seek the attention of Golston and other female corrections officers and once officers look at them, the inmates immediately begin to masturbate.

66.     The inmates also frequently ask Golston and other female officers to "give me five, I'm going to the shower," which is a request by an inmate for an officer to let the inmate look at her for five minutes while he masturbates.

67.     At times, Golston has been so disturbed and sickened by the constant exhibitionist masturbation by male inmates during a given shift that she has had to take sick leave and go home for the day.

68.     Golston at times has submitted disciplinary reports when subjected to male inmates masturbating at her.

11

69.     Golston has been deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because her supervisory officers and/or Jail administrators have lost or ignored her disciplinary reports, released inmates who were found guilty of masturbating at her early from administrative segregation, and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

**Frankietta Horn**

70.     Charging Party Frankietta Horn was hired as a corrections officer at the Jail in June 2012, and she remained in that position until February 2017, when she left to take a corrections officer position with the City of Fairhope (AL) Police Department.

71.      While employed as a corrections officer at the Jail, Horn was regularly subjected to sexual harassment by male inmates who exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

72.     Horn at times has submitted disciplinary reports when subjected to male inmates masturbating at her.

73.     Horn has been deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because her supervisory officers and/or Jail administrators have lost or ignored her disciplinary reports; released inmates, who were found guilty of masturbating at her, early from administrative segregation; and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

**Mary James**

74.     Charging Party Mary James began her employment as a corrections officer at the Jail in November 1996.  She resigned in November 2018.

75.   While working in the Jail's housing units, James was regularly subjected to sexual harassment by male inmates who exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

76.   Over the course of her more than twenty years as a corrections officer at the Jail, James witnessed an increase in inmate sexual harassment of female employees.  James observed that the prevalence of inmate sexual harassment increased over time as the population of corrections officers assigned to the housing units became increasingly female, and as the Jail's punishments for inmate harassment became less severe or non-existent.

77.   James submitted hundreds of disciplinary reports when subjected to male inmates masturbating at her.

78.   James was deterred from submitting additional reports because: supervisory officers lost or not acted upon disciplinary reports that she submitted; many disciplinary reports that she submitted were rejected on the basis that the narratives were not sufficiently graphic; inmates were frequently not disciplined for masturbating at female corrections officers and employees; and when sent to administrative segregation for masturbating, inmates were often released after only a few days.

### Chasity Johnson

79.   Charging Party Chasity Johnson began her employment as a cadet at the Jail in December 2012.  She became a corrections officer in August 2013, and resigned in June 2018.

80.    While working in the Jail's housing units, Chasity Johnson was regularly subjected to sexual harassment by male inmates who exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

81.     It was common for Chasity Johnson to be subjected to inmates' exhibitionist masturbation two to three times during a ten- to twelve-hour shift.

82.     Chasity Johnson at times submitted disciplinary reports when subjected to male inmates masturbating at her.

83.      Chastity Johnson was deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because her supervisory officers and/or Jail administrators lost or ignored her disciplinary reports, released inmates who were found guilty of masturbating at her early from administrative segregation, and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

**Lawanna Johnson**

84.     Charging Party Lawanna Johnson began her employment as a corrections officer at the Jail in October 2004.  She was promoted to the rank of corporal in or around 2015, and resigned in March 2018.

85.      While working in the Jail's housing units, Lawanna Johnson was regularly subjected to sexual harassment by male inmates who exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

86.     Lawanna Johnson had an inmate expose himself and masturbate at her continuously for thirty minutes.

87.     Lawanna Johnson at times submitted disciplinary reports when subjected to male inmates masturbating at her.

88.     Lawanna Johnson was deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because her supervisory officers and/or Jail administrators lost or ignored her disciplinary reports, released inmates who were found guilty of

14

masturbating at her early from administrative segregation, and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

### Nina Myrick

89.    Charging Party Nina Myrick began her employment as a corrections officer at the Jail in December 2006.

90.    While working in the Jail's housing units, Myrick is regularly subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

91.    Myrick at times has submitted disciplinary reports when subjected to male inmates masturbating at her.

92.    Myrick has been deterred from writing disciplinary reports when subjected to male inmates masturbating at her because many of the disciplinary reports that she has submitted have not been acted upon or the inmates have not been disciplined.

### Christina Norwood

93.    Charging Party Christina Norwood began her employment as a corrections officer at the Jail in March 2014.

94.    While working in the Jail's housing units, Norwood is regularly subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

95.    Christina Norwood at times has submitted disciplinary reports when subjected to male inmates masturbating at her.

96.    Norwood has been deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because her supervisory officers and/or Jail administrators

15

have lost or ignored her disciplinary reports; released inmates, who were found guilty of masturbating at her, early from administrative segregation; and rejected her disciplinary reports on the basis that the narratives were not sufficiently graphic.

**Lillian Sanders**

97.     Charging Party Lillian Sanders began her employment as a corrections officer at the Jail in December 2010.  During her employment, she has been assigned to work in the Jail's housing units.

98.     While working in the Jail's housing units, Sanders is regularly subjected to sexual harassment by male inmates who expose their genitals, masturbate, and direct sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at her.

99.     It is common for Sanders to be subjected to inmate masturbation multiple times in a single shift.  During one shift in 2015, one inmate masturbated at her approximately twenty times.

100.    Sanders has routinely submitted disciplinary reports on inmates who have exposed themselves to her and masturbated at her.

101.    Sanders has been deterred from submitting additional disciplinary reports when subjected to male inmates masturbating at her because many of the disciplinary reports that she has submitted have not been acted upon or the inmates have been found not guilty.

**C. Defendants Failed to Take Reasonable Steps to Prevent the Sexual Harassment**

102.    The Charging Parties have complained about inmate sexual harassment to superior officers at all levels for years.  Their complaints have been made to supervisors orally and by submitting disciplinary reports per the Jail's established processes.

103.    On information and belief, other female employees who are similarly situated to Charging Parties also complained about inmate sexual harassment to superior officers at all levels for years.

16

104.    Despite the Jail's notice of the pervasive sexual harassment of female corrections officers by inmates, the sexually hostile work environment at the Jail persists.

105.    Supervisory officers and Jail administrators have not taken the complaints raised by Charging Parties seriously and instead have been dismissive of their concerns, dissuading Charging Parties from continuing to complain.

106.    Specifically, in response to their concerns about constantly enduring inmate masturbation and other sexually harassing behavior, Charging Parties have been told, among other things, that:

    a.   "It's a part of your job.  If you don't like it, find another job;"

    b.   "That's what you get paid for, you just have to deal with it;"

    c.   "If I was an inmate, I'd gun you too;"

    d.   "Put on your big girl pants;"

    e.   "If you stopped wearing perfume and tight uniforms, and stopped getting your hair done the inmates would stop masturbating at you;"

    f.   "You shouldn't be looking so cute;"

    g.   "Turn your head, don't look;"

    h.   If an inmate masturbates as he stands at a toilet or while in bed, those areas are an inmate's "private domain" so he cannot be disciplined;

    i.    "You'll be writing disciplinaries all day, why you gonna do that?;" and

    j.   "You don't complain when you see two female inmates lying in bed together."

107.    The MCSO's inmate disciplinary process is unregulated in its processing of complaints and is ineffective in addressing, deterring, and preventing inmate sexual harassment of female employees.

108.    The MCSO does not have a specific, written policy regarding exhibitionist masturbation or other sexually aggressive behavior by inmates.

109.    Various disciplinary measures may be imposed on inmates found guilty of exhibitionist masturbation, including the suspension of commissary, phone, or visitation privileges, and confinement in the administrative segregation unit for up to thirty days.

110.    Defendants do not, however, impose consistent or effective discipline against inmates who subject Jail employees to exhibitionist masturbation or other sexually aggressive behavior.  Under the current disciplinary system, it is common that:

    a.   Disciplinary reports are ignored or lost, or disappear;

    b.   Disciplinary hearings are not held;

    c.   Inmates are not placed in the administrative segregation unit or do not serve the full terms of their discipline in the administrative segregation unit; and

    d.   Inmates are found not guilty on the basis that the disciplinary reports do not provide sufficiently graphic details of the acts of masturbation.

111.    The MCSO's inmate disciplinary process is frequently so prolonged that inmates are transferred or released prior to the final adjudication of disciplinary reports and the implementation of discipline.

112.    During his tenure as the Jail's Disciplinary Hearing Officer from August 2016 to June 2017, Sergeant Danny Rowe routinely failed to sustain masturbation charges alleged in disciplinary reports when the reports did not include graphic and detailed narratives of an inmate's alleged masturbation, such as how many times the penis was stroked and whether the inmate ejaculated.

113.    The Defendants routinely fail to hold hearings on disciplinary reports.  For example, in 2018, there were 2,939 disciplinary reports filed against inmates but the Jail conducted only 2,351 hearings.  No hearings were held for 588, or twenty percent, of the disciplinary reports filed in 2018.

114.    Of the disciplinary reports filed in 2018, only fifty-eight percent of inmates were found guilty, while nearly twenty percent were found not guilty.  There were not hearings held regarding the remaining reports.

115.    In 2017, Defendants began requiring inmates found guilty of exhibitionist masturbation to wear pink uniforms as a disciplinary measure.

116.    Defendants do not have a specific written policy or guidelines governing the use of pink uniforms for inmates or for adjudicating disciplinary reports alleging that an inmate masturbated at an employee.

117.    While standard measures to address and prevent inmate exhibitionist masturbation are available, such as exposure control jumpsuits without pockets or zippers, Defendants utilize two-piece, pink uniforms that allow inmates the same access to their genitalia that they have prior to being required to wear a pink uniform.

118.    The use of pink uniforms at the Jail has been ineffective as it has not decreased the instances or frequency with which male inmates masturbate at the Charging Parties and similarly situated female employees.

119.     Even when clothed in pink uniforms, inmates have exposed their genitals, masturbated, and directed sexual slurs, sexual propositions, threats of sexual violence, and sexually degrading comments at the Charging Parties and other female employees.

120.    On one occasion, an inmate, who was wearing a pink uniform because of a previous act of masturbation, repeatedly masturbated in front of Michale Burrell and ignored her numerous requests that he stop.

121.    Defendants do not pursue criminal prosecution of inmates found guilty of exhibitionist masturbation directed at female employees.

122.    Instead, at least until recently, Defendants required that employees personally pursue criminal prosecution by appearing before a magistrate judge to sign a warrant initiating criminal proceedings, attending court, and participating in all aspects of criminal proceedings until a case is resolved.

123.    Defendants have failed to provide non-biased training that allows officers to respond effectively to inmate sexual harassment.  Defendants only began offering training to directly address inmate sexual harassment of Jail employees after the Charging Parties filed charges of discrimination with the EEOC in October 2015.

124.    On March 3, 2016, Security Captain Sadie Stallworth issued a memo notifying all corrections officers of a "mandatory gunning training."  The training was created and presented by Captain Stallworth on March 8 and 9, 2016, in thirty-minute sessions.

125.    During the mandatory gunning training, Captain Stallworth warned officers not to submit false reports of sexual harassment against inmates; warned that reporting an inmate for sexual harassment may lead an inmate to "have to register as a sex offender" and the officers would thereby "sentence an inmate to a lifetime of shame and a grand lifestyle change;" and noted that officers "may have unfavorable confrontations on the street with an inmate(s) that you have falsely accused, which may alter your own lives."

126.    Similarly, during a shift briefing in approximately April or May 2016, Captain Stallworth told corrections officers in attendance that in order for an inmate to be found guilty of masturbating at an employee, the officers had to include explicit details of inmates' acts of masturbation when drafting disciplinary reports.   Specifically, Stallworth told officers that the disciplinary reports must (1) include how long the inmate stroked his penis, (2) have another witness in addition to the reporting officer, and (3) indicate where the inmate was looking while masturbating.

127.    The Defendants' unlawful actions have caused the Charging Parties and similarly situated female employees to endure financial and emotional injuries, including the loss of salary and other benefits of employment, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and other nonpecuniary losses.

## COUNT I

### Violation of Title VII, 42 U.S.C. § 2000e-2(a)

128.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-127 above.

129.    Defendants subjected the Charging Parties and similarly situated female employees to harassment based on their sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

130.    The continuous and presently ongoing sexual harassment includes exhibitionist masturbation, humiliation, threats of sexual violence, and sexually abusive language directed at female corrections officers and employees.

131.    The sexual harassment was sufficiently severe and/or pervasive to alter the terms and conditions of the victims' employment in the MCSO.

132.    The sexual harassment was unwelcome, created an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, and created a work

environment that the Charging Parties and similarly situated female employees perceived to be sexually abusive.

133.    At all relevant times, Defendants possessed both actual and constructive knowledge of the hostile work environment to which the Charging Parties and similarly situated female employees were subjected.

134.    Despite their knowledge, Defendants failed to take appropriate and effective steps reasonably calculated to stop or mitigate the harassment that created the hostile work environment.

135.    As a direct and proximate result of Defendants' failure to take appropriate corrective steps reasonably calculated to address male inmates' sexual harassment of them, the Charging Parties and similarly situated female employees have been harmed.  They have lost wages and other employment benefits and/or have suffered emotional distress, humiliation, embarrassment, anguish, and loss of enjoyment of life.

136.    The foregoing acts of sex discrimination and sexual harassment are continuing in nature.

## **PRAYER FOR RELIEF**

137.    The United States prays that the Court enter judgment against the Defendants and grant the following relief:

a.   Declare that the MCSO and Mobile County Sheriff Sam Cochran have subjected the Charging Parties and similarly situated female employees to a sexually hostile work environment, in violation of Title VII;

b.   Enjoin Defendants from causing, creating, or permitting a sexually hostile work environment;

c.   Order Defendants  to develop and implement appropriate and effective policies, procedures, and practices designed to prevent and correct harassment of female

employees by male inmates, including but not limited to: policies prohibiting sexually harassing behavior by inmates; policies relating to the receipt and processing of disciplinary reports or other complaints about sexually harassing behavior by inmates; policies relating discipline for sexually harassing behavior by inmates, and training on all such policies provided by a non-biased third party for employees and managers;

d.  Award compensatory damages to the Charging Parties and similarly situated female employees to fully compensate them for their injuries, pain, and suffering caused by Defendants' unlawful conduct, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a;

e.  Award any additional equitable relief necessary to make the victims whole, including back pay and other lost benefits; and

f.  Award such additional relief as justice may require, together with the United States' costs and disbursements in this action.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

Respectfully submitted,

Dated:  March 10, 2021

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

_/s/ Taryn Wilgus Null_____
DELORA KENNEBREW
*Chief*
*Employment Litigation Section*
MEREDITH L. BURRELL (MD Bar, no number issued)
*Deputy Chief*
TARYN WILGUS NULL, DC Bar #985724
ALICIA D. JOHNSON, DC Bar #494032
JULIET E. GRAY, DC Bar #985608
*Senior Trial Attorneys*
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E., Room 9.1139
Washington, DC 20530
Phone (cellular): (202) 532-3560 (Null)/
(202) 532-5872 (Johnson)/ (202) 598-1600 (Gray)
Facsimile: 202-514-1005
Taryn.Null@usdoj.gov
Alicia.Johnson@usdoj.gov
Juliet.Gray@usdoj.gov