IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, and ) | |
| ) | |
| MICHALE BURRELL, et al., ) | |
| ) | |
| Intervenor Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 21-00114-KD-N |
| ) | |
| MOBILE COUNTY SHERIFF'S OFFICE ) | |
| and MOBILE COUNTY SHERIFF ) | |
| SAM COCHRAN, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This action is before the Court on the motion for partial summary judgment filed by Plaintiff United States, memorandum of law in support, and exhibits (docs. 136, 138, 141); Intervenor Plaintiffs' motion and memorandum for partial summary judgment (doc. 145),[1] Defendants Mobile County Sheriff's Office and Mobile County Sheriff Sam Cochran's response and exhibits (doc. 158, doc. 161), the United States' reply (doc. 165), and the Intervenor Plaintiffs' reply (doc. 167).

Also, this action is before the Court on Defendants' motion for summary judgment, brief, and exhibits (doc. 135, doc. 140), the United States' response and exhibits (doc. 157, doc. 159), the Intervenor Plaintiffs' response (doc. 162),[2] and Defendants' reply (doc. 166).

---

[1] Plaintiff Intervenors "adopt and incorporate by reference" the United States' motion and memorandum (doc. 145, p. 2).

[2] Plaintiff Intervenors "incorporate by reference" the United States' response to Defendants' motion for summary judgment (doc. 162, p. 3).

Upon consideration, and for the reasons set forth herein, the United States' and Intervenor Plaintiffs' motions for partial summary judgment are DENIED and Sheriff Cochran's motion for summary judgment is DENIED.

I. Background

Intervenor Plaintiffs are female employees who work or have worked at the housing units in the Mobile County Metro Jail. The United States and Intervenor Plaintiffs ("Plaintiffs") allege two claims: 1) That Mobile County Sheriff's Office and Mobile County Sheriff Sam Cochran ("Defendants") engaged in a pattern or practice – from approximately 2011 to the present - of discrimination against female employees by maintaining a hostile work environment of sexual harassment by the male inmates at the Jail, and 2) that Defendants subjected Plaintiff Intervenors and similarly situated female employees[3] to extreme sexual harassment by the male inmates which created a hostile work environment because of their sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a) (doc. 58, p. 21, Count One); (doc. 29, p. 5-6, Count One) (same). Plaintiffs allege that Defendants are liable because they did not take immediate, appropriate, and effective steps reasonably calculated to prevent the sexual harassment (Id.). Plaintiffs seek to recover for an estimated 250 aggrieved current and former female employees who were adversely affected by the discriminatory pattern or practice during the relevant period.

II. Mobile County Sheriff's Office as a defendant

In the Amended Complaint, the United States alleges that "Defendant Mobile County Sheriff's Office is a corporate, governmental body created pursuant to the laws of the State of Alabama" (doc. 58, ¶ 10). Defendants deny this allegation and "the Sheriff demands strict proof thereof" (doc. 61, p. 2).

---

[3] The United States indicates that the relevant class of plaintiffs includes all female Correctional Officers and "female employees in other positions who had direct contact with male inmates" (doc. 141, p. 12, n. 3).

Defendants now raise the issue of whether the MCSO is a proper defendant. They argue that it "is not a legal entity subject to suit and should be dismissed on that basis" (doc. 140, p. 1-2; doc. 161, p. 2; doc. 166, p. 1 (the MCSO "clearly is a nonexistent entity not subject to being sued in federal or state court, and any judgment taken against it would be unenforceable.").

The United States asserts that Defendants "have never filed a motion to dismiss MCSO from this case and have never sought to confer with the United States about dismissing MCSO as a defendant" (doc. 159, p. 2, n. 1). The United States points out that no proper motion to dismiss is pending before the Court. (Id.). However, the United States has also failed to provide any support for its position that MCSO is a proper defendant.

Albeit not in a formal motion to dismiss, the issue has been raised (doc. 140, p. 1-2; doc. 161, p. 2; doc. 166, p.1). In support, Defendants cite Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992) and Johnson v. Mobile County Sheriff's Department, 2007 WL 2023488 (S.D. Ala. July 9, 2007). In Dean, the Court of Appeals for the Eleventh Circuit held that the "Jefferson County Sheriff's Department is not a legal entity and, therefore, is not subject to suit or liability under section 1983." 951 F. 2d at 1214. The Eleventh Circuit explained that

> The question here is not whether the Jefferson County Sheriff's Department is a "person" for the purposes of liability under Monell and section 1983, *but whether the Department is a legal entity subject to suit.*

951 F.2d at 1214 (italics added). The Eleventh Circuit stated that "Sheriff's departments and police departments are not usually considered legal entities subject to suit[.]" Id. at 1214-1215 (collecting cases). The Eleventh Circuit decided that "[u]nder Alabama law, a county sheriff's department lacks the capacity to be sued." Id. at 1215 (citing White v. Birchfield, 582 So.2d

1085, 1087 (Ala.1991)). In White, the Alabama Supreme Court held, without discussion,[4] that the "Chambers County Sheriff's Department is not a legal entity subject to suit."

In Johnson, the plaintiff raised discrimination claims against several entities including the Mobile County Sheriff's Department. The district court, citing Dean and White, found that "the Sheriff's Department is not a legal entity subject to suit." 2007 WL 2023488 at *7. Thus, Alabama law appears well-established that a "'sheriff's office' or 'sheriff's department' is not a legal entity subject to suit." Hare v. Mack, - - - So. 3d - - -, 2022 WL 188292, at *2, n. 2 (Ala. Jan. 21, 2022) (not yet released for publication) (citing King v. Colbert County, 620 So. 2d 623, 626 (Ala. 1993); Ex parte Haralson, 853 So. 2d 928, 931 (Ala. 2003) (same).

Fed. R. Civ. P. 17(b) sets forth in relevant part, that "[c]apacity to sue or be sued is determined as follows: . . . (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located[.]"[5] Since there is no evidence that the MCSO is a corporation, and sheriff's departments or offices are not legal entities subject to suit in Alabama, **the MCSO is DISMISSED from this action.**

---

[4] Caffey v. Mobile Police Department, 2013 WL 4052430, at *1 (S.D. Ala. Aug. 12, 2013) ("The Court notes that the Alabama Supreme Court has expressly held that a sheriff's department 'is not a legal entity subject to suit.' White v. Birchfield, 582 So.2d 1085, 1087 (Ala.1991); accord Ex parte Haralson, 853 So.2d 928, 931 (Ala.2003); King v. Colbert County, 620 So.2d 623, 626 (Ala.1993). White cited no authority and provided no analysis, but rather simply announced the conclusion. King merely cited White, and Haralson merely cited White and King. What the Court draws from these cases is that the Alabama Supreme Court deems it obvious that a sheriff's department is not a suable entity.").

[5] An exception exists for partnerships or other unincorporated associations. Specifically, under Fed. R. Civ. P. 17(b)(2)(A) "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws[.]" However, in Dean, the Eleventh Circuit held that the provision for suing partnerships or other unincorporated associations did not extend to "government units, subdivisions or agencies." 951 F. 2d at 1214, n.4 ("We conclude, therefore, that the Jefferson County Sheriff's Department is not an 'unincorporated association' for purposes of Rule 17.").

III. The motions for summary judgment

A. Standard of review for cross-motions for summary judgment

When reviewing cross-motions for summary judgment, the district courts must "view the facts in the light most favorable to the nonmoving party on each motion." James River Ins. Co. v. Ultratec Special Effects, Inc., 22 F. 4th 1246, 1251 (11th Cir. 2022) (citing Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012)). "Summary judgment is appropriate when a movant shows that there is 'no genuine dispute as to any material fact,' such that 'the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). "The movant bears the burden of presenting pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute." Williamson v. Brevard County, Fla., 928 F.3d 1296, 1304 (11th Cir. 2019) (citations and quotations omitted)).

"'Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial.'" James River Ins. Co., 22 F. 4th at 1251 (quoting Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010)). "If the nonmovant's evidence is 'not significantly probative,' summary judgment is appropriate." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"A genuine dispute of material fact exists only when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, at 248, 106 S.Ct. 2505). "'The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].'" Id. (quoting Anderson, at 252, 106 S. Ct. 2505) (bracketed text in original).

B. Statement of the law

5

Pursuant to Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Title VII is implicated where a plaintiff's working conditions have been discriminatorily altered based on her gender." Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1304–05 (11th Cir. 2016) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 25, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993) (Scalia, J., concurring)). Title VII and accompanying case law organize discrimination based on gender into two categories. Reeves v. CJH Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (addressing Reeves' case as one "under the disparate treatment framework"). Specifically, disparate treatment which may manifest as a "tangible employment action" like a demotion or firing, or as a "'hostile work environment' that changes 'the terms and conditions of employment'" even without a tangible employment action. Id. Or, disparate impact, which "involves 'facially neutral employment practices that have significant adverse effects on protected *group*s ... without proof that the employer adopted those practices with a discriminatory intent ....'" Id.

Generally, to establish a prima facie case of an individual's hostile work environment claim based on sexual harassment, the plaintiff must show that (1) she belongs to a protected group; (2) that she was subject to unwelcome sexual harassment; (3) the harassment was based on the sex of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of the employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable for the harassment. Furcron, 843 F.3d at 1304–05 (citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)); Reeves, 594 F.3d at 808 (same).

6

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." Ricks v. Indyne, Inc., No. 21-13051, 2022 WL 8022536, at *4 (11th Cir. Oct. 14, 2022) (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999)). "'Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive.'" Callahan v. City of Jacksonville, Fla., 805 F. Appx. 749, 751 (11th Cir. 2020) (quoting Miller, 277 F. 3d at 1276) (alteration and ellipses in original) (quotation omitted).[6]

As to pattern or practice, Plaintiffs' "initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 360, 97 S. Ct. 1843, 1867 (1977). "To meet this burden of proof, a plaintiff must 'prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts. It ha[s] to establish by a preponderance of the evidence that [ ] discrimination [is] the company's standard operating procedure—the regular rather than unusual practice." E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1287-1288 (11th Cir. 2000) (bracketed text in original) (citing Teamsters, 431 U.S. at 336); E.E.O.C. v. NDI Office Furniture LLC, 2021 WL 2635356, at *10 (N.D. Ala. June 25, 2021) ("Sporadic acts of bias are not enough to establish a pattern or practice.") (citing Joe's Stone Crab, Inc., 220 F.3d at 1287). "A plaintiff may establish a pattern or practice claim 'through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent

---

[6] "'In evaluating the objective severity of the harassment, [the court may consider], among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" Callahan, 805 Fed. Appx. at 75 (bracketed text added); Reeves, 594 F. 3d at 808-809 (same).

7

to treat the protected class unequally.'" Joe's Stone Crab, Inc., 220 F.3d at 1287 (citation omitted). And "'direct evidence of an intent to discriminate' may be used to establish a pattern or practice claim." Id. (citation omitted). Also, "[a]t the initial, 'liability' stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed." Teamsters, 431 U.S. at 360; Joe's Stone Crab, Inc., 220 F.3d at 1287 (same).

> As explained in Joe's Stone Crab, Inc.,
>
> Once this pattern or practice is established, the burden of proof then shifts to the employer to demonstrate that the government's showing of a pattern or practice of discrimination is either inaccurate or insignificant. If the employer fails to rebut the government's prima facie case, the resulting finding of a discriminatory pattern or practice may give rise to an inference that all persons subject to the policy were its victims and are entitled to appropriate remedies. As we have explained previously, "once a pattern and practice of discrimination is established, a rebuttable presumption that [the] plaintiff was discriminated against because of her sex and is entitled to recovery obtains. The employer may overcome this presumption only with clear and convincing evidence that job decisions made when the discriminatory policy was in force were not made in pursuit of that policy."

Joe's Stone Crab, Inc., 220 F.3d at 1287 n. 22 (citing Cox v. American Cast Iron Pipe Co, 784 F.2d 1546, 1559 (11th Cir. 1986) and Teamsters, 431 U.S. at 362).

Thus, as to liability, Plaintiffs must "establish a pattern or practice of harassment based on the objective elements of sexual harassment, including that 'an objectively reasonable person would find that, as a whole, the environment within the company is hostile." E.E.O.C. v. Pitre, Inc., 908 F. Supp. 2d 1165, 1176 (D.N.M. 2012) (recognizing that under most approaches to a pattern or practice sexual harassment claim, "the Teamsters framework is modified to

accommodate the subjective element of the claim" and at Phase I, the plaintiff has the burden to establish a pattern or practice of harassment based on the objective component).

C. <u>The cross motions for summary judgment</u>

Plaintiffs seek partial "summary judgment on Defendants' liability for their pattern or practice of maintaining a sexually hostile work environment in violation of Title VII…" (doc. 136; doc. 141, doc. 145; doc. 159). Plaintiffs seek summary judgment in their favor and in favor of all similarly situated female employees. As to the first three elements of a hostile work environment claim based on sexual harassment, they argue there is no genuine dispute of material fact that the female employees are members of a protected class, that they were subject to unwelcome sexual harassment by male inmates, and that the harassment was based on the female employees' sex (doc. 141; doc. 165, p. 2-6).

In his motion, Defendant Sheriff Cochran concedes that "[i]t is a given that the Plaintiffs belong to a protected group and were subject to unwelcome sexual harassment from male inmates based on their sex" (doc. 140, p. 15; 20-25; doc. 161, p. 18, "The Sheriff agrees that the Plaintiffs are female."; doc. 161, p. 19; "The Sheriff agrees that the Plaintiffs have been harassed."; "The Sheriff agrees that some of the harassment is based on the officer's sex." Id. p. 19-20).

Pursuant to Fed. R. Civ. P. 56(g), "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact … that is not genuinely in dispute and treating the fact as established in the case." Accordingly, the Court finds there is no genuine dispute of material fact that Plaintiff Intervenors and similarly situated female employees belong to a protected group, they were subject to unwelcome sexual harassment by the male inmates, and the sexual harassment was based on their sex. These facts may be treated as established in this case.

9

As to the fourth element, Plaintiffs argue that in determining liability on a pattern or practice claim, this element is decided by an objective standard: Whether the sexual harassment was sufficiently severe or pervasive to alter the terms and conditions of a reasonable woman's employment at the same position and circumstances (doc. 141, p. 6, 15-19; doc. 145). Specifically, they argue that "[g]iven the frequency of the sexual misconduct, its severity, its physically threatening and humiliating nature, and how it disrupts officers' job performance, there is ample evidence that female employees experience harassment that a reasonable woman would consider to be severe and pervasive." (doc. 141, p. 18-19; doc. 165, p. 7 (the "relevant legal standard for determining whether the severe or pervasive element is met should be judged *solely* by whether the sexual harassment would have altered the terms or conditions of employment for a reasonable woman.") (italic in original). Plaintiffs also argue that by conceding the severity or pervasiveness of the harassment, Sheriff Cochran has also conceded that the female employees' terms and conditions of employment were altered (doc. 159, p. 2; doc. 162, p. 2; doc. 165, p. 6-7).[7]

Sheriff Cochran does not dispute that the unwanted sexual harassment was severe or pervasive but argue that it did not alter the terms and conditions of employment (doc. 140, p. 15; doc. 161, p. 20-21).[8] He disputes any concession "that the inmate harassment altered the terms

---

[7] The Plaintiff Intervenors argue that Sheriff Cochran, by asserting that all correctional officers are subject to threats and harassment, "misapprehend[s] the nature and reach of Title VII's sex discrimination and sexual harassment provisions" (doc. 167, p. 2-3). They point out that "[n]o one disputes that inmates engage in abusive conduct that is not sex-based. All correctional officers endure such conduct irrespective of their sex. The Intervenors' claims are not based on such inmate behavior and Title VII would not support such a claim based on conduct experienced by all staff irrespective of sex. Here, however, the gunning and the other sexually harassing behavior testified to by the Intervenors is conduct which only women experience" (doc. 167, p. 3).

[8] Sheriff Cochran argues that the sexual harassment did not alter the terms and conditions of employment because jails are an inherently abusive environment for all corrections officers (doc. 161). Specifically, that the Jail is "a challenging and abusive environment and corrections

and conditions of the Plaintiff-Intervenors' employment." (doc. 166, p. 7). He points out that "[w]ell settled caselaw on hostile work environment claims, including the cases cited/ quoted by the United States, holds that the harassment must be 'sufficiently severe or pervasive to alter the terms and conditions of employment.' The courts wouldn't have added the words 'to alter the terms and conditions of employment' if proof of 'severe and pervasive' was enough" (doc. 166, p. 8). He argues that the harassment was not "sufficiently" so in the context of employment as a corrections officer in the jail environment.

The Court has considered the parties' argument and evidence (consisting primarily of deposition excerpts and declarations of female employees or their supervisors, expert reports, and discovery responses). Viewing the undisputed facts in favor of the non-movant as required on cross motions, and drawing all reasonable inferences therefrom, the Court is unable to conclude that summary judgment should be granted to either party as to this element. Instead, a genuine dispute remains whether the severe or pervasive conduct (which is admitted), was objectively sufficient to alter the terms and conditions of employment for a reasonable female correctional officer.

As to the fifth element, Sheriff Cochran argues there is no basis for liability because he took reasonable steps to address the sexual harassment and did not refuse to adopt reasonable

---

officers, male and female, face abuse from inmates" and that the "corrections officer's job includes monitoring inmates for violations and writing disciplinary reports when violations occur. The female corrections officers who observe sexual harassment are required to deal with and handle that just like they are required to deal with" escape or assault and "[d]ealing with unruly, misbehaving, disrespectful, and abusive inmates is one of the many duties of a corrections officer" (doc. 161, p. 20). Also, a "reasonable corrections officer would not be surprised to have to deal with inmates who engage in anti-social and criminal behavior" and "[w]hile the behavior of the male inmates is egregious, outrageous, and offensive, it is no more offensive than inmates flinging feces and urine on male corrections officers or threats of violence and harm directed at male corrections officers. The sexual harassment of female corrections officers has been treated as seriously and as forcefully as threats, assaults, and harassment of male officers" (doc. 166, p. 10-11).

measures to curtail the harassment (doc. 140, p. 15-25; doc. 161, p. 21-25; doc 166).[9] In support, he outlines the steps taken. Specifically, application of an inmate disciplinary process, pink uniforms for offending inmates, a segregated housing unit - "dedicated wedge", specialized training for correctional officers, window tinting, and placing criminal charges against the offending inmates.

Plaintiffs argue that Sheriff Cochran has created his "own standard, which merely requires [him] to show that [he] took some 'reasonable' measures – no matter how untimely or ineffective – to curtail the inmate sexual harassment." (doc. 159, p. 3-14 (bracketed text added)1; doc 162, p. 3-6; doc. 141, p. 18-36; doc. 145, p. 10). Plaintiffs argue that the appropriate standard for liability for the harassing conduct of third parties is whether "the employer fails to take *immediate and appropriate* corrective action in response to a hostile work environment of which the employer knew or reasonably should have known." (doc. 159, p. 4, emphasis in original). In other words, Plaintiffs take the position that the standard is more specific than the general reasonableness standard proposed by Sheriff Cochran. Plaintiffs point out that Sheriff Cochran knew about the sexual harassment because of the multiple female employees' complaints (and one email by a male corrections officer) but his response was not immediate or appropriate corrective action.

---

[9] To the extent Sheriff Cochran argues that he is not liable because Plaintiff Intervenors and similarly situated female employees failed to follow policies and procedures to initiate disciplinary actions or report the conduct to supervisors, the defense is not available. The harassing inmates are third parties. See Beckford v. Department of Corrections, 605 F. 3d 951, 960-961 (11th Cir. 2010) ("By its own terms, the Faragher defense is available to employers who defend against complaints of "an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the [plaintiff] employee." . . . When, as here, employees complain of harassment by someone other than a supervisor, the Faragher defense does not apply.")

Sheriff Cochran and Plaintiffs cite Beckford v. Dept. of Corrections, 605 F. 3d 951 (11th Cir. 2010). In Beckford, the Eleventh Circuit explained that "[o]ur general; rule of reasonableness regarding employer liability for third-party harassment under Title VII adequately respects the difficulties that prison officials encounter in controlling inmate conduct." Id. at 959. The Eleventh Circuit also explained that "[a]lthough some harassment by inmates cannot be reasonably avoided, the Department, on the other hand, cannot refuse to adopt reasonable measures to curtail harassment by inmates." Id. The Eleventh Circuit further explained that an employer may be found liable when it "'fails to take immediate and appropriate corrective action in response to a hostile work environment of which the employer knew or reasonably should have known.'" Id. at 957-958. In other words, Plaintiffs' and Sheriff Cochran's arguments are not based on two different standards. The factors that Plaintiffs propound are subsumed in the determination of whether Sheriff Cochran acted reasonably.

The Eleventh Circuit found as follows:

> The district court correctly applied the standard of reasonableness that governs employers under Title VII. The district court instructed the jury that "[i]f you determine that a particular plaintiff was in fact subject to a hostile or abusive work environment, you must then determine whether her employer created or permitted that hostile and abusive work environment." The district court explained that the "Department of Corrections created or permitted a hostile or abusive work environment only if the department ... failed to take corrective action reasonabl[y] calculated to address the inmate misconduct." The district court instructed that, in considering whether the corrective action was reasonable, the jury should consider "the Department of Corrections' ability to stop or mitigate the misconduct." The district court also required the jury to answer a special interrogatory for each verdict that asked whether "the defendant failed to exercise reasonable care to prevent and correct promptly any sexually harassing behavior in the workplace."

Beckford, 605 F. 3d at 959.

The Court has considered the parties' argument and evidence (consisting primarily of deposition excerpts and declarations of female employees or their supervisors, expert reports, and discovery responses). Viewing the undisputed facts in favor of the non-movant as required on cross motions, and drawing all reasonable inferences therefrom, the Court is unable to conclude that summary judgment should be granted to either party as to liability. Instead, a genuine dispute remains as to whether the evidence provides a basis for holding Sheriff Cochran liable, i.e., whether he failed to take immediate and appropriate corrective action reasonably calculated to address the harassment.

IV. Conclusion

For the reasons set forth herein, the parties' motions for summary judgment are DENIED. DONE and ORDERED this the 3rd day of January 2023.

s/Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE