**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

and

MICHALE BURRELL, *et al.*,

       Intervenor Plaintiffs,

v.

MOBILE COUNTY SHERIFF PAUL BURCH
(in his official capacity),

       Defendant.

Civil Action No. 1:21-cv-00114-KD-N

**JOINT MOTION FOR PROVISIONAL ENTRY OF SETTLEMENT AGREEMENT
AND SCHEDULING OF A FAIRNESS HEARING ON THE
TERMS OF THE SETTLEMENT AGREEMENT**

Plaintiff United States of America ("United States"), Defendant Mobile County Sheriff Paul Burch ("Defendant") and Plaintiff-Intervenors (collectively, the "Parties") jointly move the Court to provisionally enter the proposed Settlement Agreement ("Agreement"), attached as Exhibit A, and schedule a fairness hearing on the terms of the agreement no less than 100 days from the date of the Court's order on this Joint Motion, as provided in Paragraph 23 of the Agreement.

The Agreement will resolve all claims in this civil action alleging that Defendant Mobile County Sheriff Paul Burch, in his official capacity, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., by subjecting the fourteen Plaintiff-Intervenors and similarly situated female employees of the Jail to harassment and a pattern or practice of hostile

work environment discrimination based on their sex. The fairness hearing on the terms of the agreement would allow the Court to hear any objections to the terms of the Agreement and to decide whether to enter the Agreement as a final order.

As set forth in the accompanying Memorandum of Law, the Court should provisionally enter the Agreement because its terms are fair, adequate, reasonable, and not the result of collusion. *Greco v. Ginn*, 635 F. App'x 628, 632 (11th Cir. 2015) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Accordingly, the Parties respectfully request that the Court provisionally enter the Agreement and schedule a fairness hearing on the terms of the Agreement no less than 100 days from the date of the Court's Order on this Joint Motion.

Date:  April 21, 2023

Respectfully submitted,

For Plaintiff United States of America:

By:

KAREN D. WOODARD
*Chief*
*Employment Litigation Section*

MEREDITH L. BURRELL (MD Bar, no number issued)
*Principal Deputy Chief*

*/s/ Taryn Wilgus Null*
TARYN WILGUS NULL, DC Bar #985724
JULIET E. GRAY, DC Bar #985608
EMILY GIVEN, NY Bar #5420211
CATHERINE N. SELLERS, WA Bar #44563
SHARION SCOTT, DC Bar #1617438
ALICIA D. JOHNSON, DC Bar #494032
JULIA T. QUINN, DC Bar #1031695
*Trial Attorneys*
U.S. Department of Justice
Civil Rights Division

Employment Litigation Section
150 M Street, N.E., Room 9.1139
Washington, DC 20530
Phone (cellular): (202) 532-3560 (Null)/
 (202) 598-1600 (Gray)/ (202) 532-5696 (Given)/ (202) 598-0696 (Sellers)/ (202) 598-5592
(Scott)/ (202) 532-5872 (Johnson)/ (202) 598-5171 (Quinn)
Facsimile: 202-514-1005
Taryn.Null@usdoj.gov
Juliet.Gray@usdoj.gov
Emily.Given@usdoj.gov
Catherine.Sellers@usdoj.gov
Sharion.Scott@usdoj.gov
Alicia.Johnson@usdoj.gov
Julia.Quinn@usdoj.gov

For the Sheriff:
  */s/ K. Paul Carbo Jr.*
K. PAUL CARBO, JR. (CARBK8014)
MICHAEL M. LINDER (LINDM7310)
The Atchison Firm, P.C.
3030 Knollwood Drive
Mobile, Alabama 36693
Telephone: (251) 665-7200
Facsimile: (251) 665-7250
Email: paul.carbo@atchisonlaw.com
Email: michael.linder@atchisonlaw.com

  */s/ Stacy L. Moon*
Stacy L. Moon (asb-6468-i72s)
Gordon Reed Scully Mansukhani, LLP
420 20th Street North – Suite 2200
Birmingham, AL 35203
smoon@grsm.com
Phone: (205) 980-8200
Fax: (205) 383-2816

Attorneys for the Sheriff


For Plaintiff-Intervenors:

*/s/ John C. Davis*
JOHN C. DAVIS
Attorney for Plaintiff-Intervenors
Law Office of John C. Davis, Florida Bar # 827770
623 Beard Street

Tallahassee, FL 32303
Telephone: (850) 222-4770
Email: john@johndavislaw.net


*Counsel for the Sheriff and Plaintiff-Intervenors have consented to the filing of this document with their electronic signatures affixed thereto.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| and | |
| MICHALE BURRELL, *et al.*, | |
| Intervenor Plaintiffs, | |
| v. | Civil Action No. 1:21-cv-00114-KD-N |
| MOBILE COUNTY SHERIFF PAUL BURCH (in his official capacity), | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES'
JOINT MOTION FOR PROVISIONAL ENTRY OF SETTLEMENT AGREEMENT**

## I.    INTRODUCTION

Plaintiff United States of America ("United States"), Defendant Mobile County Sheriff Paul Burch ("Sheriff"), and Plaintiff-Intervenors (collectively, the "Parties") submit this Memorandum of Law in Support of the Parties' Joint Motion for Provisional Entry of Settlement Agreement and Scheduling of a Fairness Hearing on the Terms of the Settlement Agreement ("Joint Motion"). The Parties request that the Court provisionally enter the Settlement Agreement ("Agreement") filed with this Joint Motion as Exhibit A and schedule a Fairness Hearing on the Settlement Agreement. Provisional entry of the Agreement will enable the Parties to initiate its provisions for providing notice to interested parties. The Court should hold a fairness hearing on the proposed Agreement to provide persons who may be affected by its provisions an opportunity to be heard on their interests and determine whether the Agreement's monetary and non-monetary

1

terms provide fair, reasonable, and adequate relief to Plaintiff-Intervenors and similarly situated females employed at the Mobile County Metro Jail ("Jail").  If approved and entered by the Court, the Agreement will resolve all claims in this action alleging that the Sheriff violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), by subjecting the fourteen Plaintiff-Intervenors and similarly situated female employees of the Jail to harassment and a pattern or practice of hostile work environment discrimination based on their sex.  As set forth below, if entered, the Agreement will provide (1) monetary remedies to Plaintiff-Intervenors and eligible similarly situated females employed at the Jail between January 1, 2011 and April 21, 2023; and (2) non-monetary relief in the form of policies, procedures, trainings, and other measures tailored to address inmate sexual misconduct towards female Jail employees and prevent the creation and maintenance of a hostile work environment at the Jail.

## II.     BACKGROUND

This action was brought by the United States against the Sheriff to enforce the provisions of Title VII.  Fourteen individual women who work or have worked for the Sheriff as corrections officers intervened in this action as Plaintiff-Intervenors.  This Court has jurisdiction over this action under 42 U.S.C. §§ 2000e-5(f), as well as 28 U.S.C. §§ 1331 and 1345.

In its amended complaint, the United States alleged, as violations of Sections 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a),  that since at least 2011, the Sheriff subjected the 14 Plaintiff-Intervenors and similarly situated female employees who work in the housing units at the Mobile County Metro Jail to harassment based on their sex, in violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a).  The Parties do not dispute that male inmates have regularly exposed their genitalia to female employees, masturbated directly at female employees, and made graphic and sexually threatening comments to female employees.  The United States alleged that the inmates' behavior creates a hostile work environment as that term is defined by Title VII of the Civil Rights

2

Act of 1964 and that the Sheriff did not take immediate and appropriate actions to respond to this behavior on the part of male inmates.  The Plaintiff-Intervenors intervened as of right under 42 U.S.C. § 2000e-5(f)(1) and filed their complaint asserting similar individual claims under Title VII.  The Sheriff denies that the behavior created a hostile work environment as that term is defined by Title VII of the Civil Rights Act of 1964 and that he failed to take reasonable and appropriate steps to respond to the male inmates' behavior.  The Sheriff denies all liability and violations of Title VII.

After more than a year of extensive fact and expert discovery, the Parties engaged in settlement discussions, including two productive mediation sessions in February 2023, facilitated by Michael Upchurch, which culminated in the proposed Agreement.  The Parties consent to the terms of the proposed Agreement and agree to waive hearings and findings of fact and conclusions of law on the merits of this case, subject to the fairness hearings outlined below.

The Parties respectfully request that the Court provisionally enter the proposed Agreement and schedule the Initial Fairness Hearing on the terms of the Agreement no less than 100 days from the date of the Court's Order on this Joint Motion.  In those 100 days, the Parties will provide the individuals whose interests may be implicated by the Agreement with notice and opportunity to object to the terms of the Agreement, and the Parties will address any timely objections prior to the Initial Fairness Hearing.  The Court will have the opportunity to consider and resolve objections to the terms of the Agreement at the Initial Fairness Hearing.  The Agreement also reflects the Parties' agreement that the Court enter its terms as an order and retain jurisdiction over this matter for the purpose of resolving any disputes or entering orders that may be appropriate under the terms of the Agreement.  The Agreement will expire without further Motion of the Parties or Order

of the Court at either the end of the term of the Court's jurisdiction over non-monetary relief, or after all monetary relief provided for in this Agreement is fully implemented, whichever is later.

## III.    SUMMARY OF THE AGREEMENT

The Agreement specifies both the agreed monetary and non-monetary relief that will be provided in resolution of this case.  In order to assist the Court, below is an overview of the central provisions of the Agreement.[1]

### A.  Individual Relief

The Agreement provides for individual monetary relief for Plaintiff-Intervenors and similarly situated women, both current and former employees, who are eligible pursuant to the Agreement's terms.  *See* Ex. A ¶ 34.  The Agreement also provides attorneys' fees for private counsel.  *Id.* ¶ 35.  Monetary relief of $2,020,000.00 will be distributed among the Plaintiff-Intervenors and eligible non-party female employee claimants as identified below.  *Id.* ¶¶ 34-36. This amount does not exceed full make-whole monetary relief, and the distribution of shares to be paid to eligible non-party claimants will be determined solely by the United States, subject to final approval by the Court.

Each Plaintiff-Intervenor has agreed to a set award of $35,000 in compensatory damages plus a portion of her attorney's fees in settlement of her claims, totaling $610,000 altogether.  *Id.* ¶ 34(c).  The remaining $1,410,000 will be allocated pursuant to the claims process set forth in the Agreement, *id.* ¶¶ 34(b), 59-92, to compensate individuals for emotional injury arising from the claims asserted in this case.  To determine whether a person is entitled to individual relief, the United States will ensure that persons who seek relief meet the Agreement's definition of a

---

[1] This Memorandum paraphrases portions of the Agreement. To the extent any language in this Memorandum is interpreted as inconsistent with the Agreement, the Parties agree that the language in the Agreement prevails.

"Claimant," who is entitled to monetary relief.  A "Claimant" is defined as (a) a female; (b) who worked as a corrections officer or corporal at the Jail at any time between January 1, 2011 and April 21, 2023; (c) is not a Plaintiff-Intervenor; (d) who experienced sexual misconduct from male inmates housed at the Jail while working in the inmate detention area; and (e) was harmed by the sexual misconduct from male inmates.  *Id.* ¶¶ 1, 59.  The United States, in consultation with the Claims Administrator, will propose an amount for each Claimant's monetary payment by considering the responses on the Interest-in-Relief Forms.  *Id.*, Attachment C.

### B.  Non-Monetary Relief

The Agreement specifies the processes and operations to be implemented by the Sheriff to resolve this action.  Generally, the Sheriff shall not fail to take immediate and appropriate corrective action to address inmates engaging in sexual harassment or retaliate against any employee that opposes inmate sexual misconduct or participates in investigations related to inmate sexual misconduct and the Jail's response to the sexual misconduct.  *Id.* ¶¶ 37-38.  Although not included in the following summary, the actions described will occur within the timeframes specified in the Agreement.

#### 1.  Policies on Inmate Sexual Misconduct

The Sheriff shall revise the Jail's policies, procedures, and/or guidelines on employee sexual harassment and equal opportunity rights to: (i) designate that inmate sexual misconduct constitutes sexual harassment of employees; (ii) expressly identify procedures employees can use to submit EEO complaints when sexual harassment has not been adequately addressed; and (iii) implement the final policy after agreement between the Parties or court order.  *Id.* ¶ 40.

The Sheriff will develop, implement, and distribute a proposed Inmate Sexual Misconduct Policy that prohibits inmate sexual misconduct, that lists the types of behaviors that constitute

inmate sexual misconduct, the actions that Jail employees must take in response, and the possible sanctions that may be imposed on inmates. *Id.* ¶¶ 42(a),(b), 50. The proposed Inmate Sexual Misconduct Policy must also include an anti-retaliation provision and outline the respective duties of supervisors in receiving and the Disciplinary Hearing Officer ("DHO") in investigating and issuing sanctions on reports of inmate sexual misconduct. *Id.* ¶¶ 42(d)-(f). After review and input by the United States, the Sheriff shall issue, distribute, and implement the final Inmate Sexual Misconduct Policy. *Id.* ¶¶ 43-44.

Similarly, the Sheriff will revise the Inmate Handbook to define the behaviors that constitute inmate sexual misconduct and the consequences for engaging in these behaviors in a manner that tracks the same information included in the Inmate Sexual Misconduct Policy. *Id.* ¶ 45. After review and input by the United States, the Sheriff shall implement the revised Inmate Handbook. *Id.* ¶¶ 46-47.

### 2. Trainings and Communications to Employees

Each year, the Sheriff shall provide live (in-person or virtual), interactive, mandatory training to educate all Jail non-supervisory employees and DHOs on the Inmate Sexual Misconduct Policy and the Inmate Handbook. The initial training sessions shall be conducted by an outside, independent vendor agreed upon by the Parties and a high-level Supervisor, such as the Warden, Deputy Warden, or Captain.

The Sheriff will also provide annual, mandatory training to educate all current Jail wardens, captains, lieutenants, sergeants, and the DHOs, on their responsibilities under the Jail's policies prohibiting and correcting for inmate sexual misconduct, and to discuss the Inmate Sexual Misconduct Policy and the Inmate Handbook. The initial training sessions shall be conducted by an outside, independent vendor agreed upon by the Parties.

All training attendance shall be tracked and reported.  After the initial trainings, the Sheriff may utilize video tapes of prior trainings, along with training given by designated training officers using the same or similar materials.  *Id.* ¶¶ 51-52.

### 3.  Notification to Inmates

The Sheriff shall post a notice of the Jail's zero tolerance for inmate sexual misconduct on the kiosk in each wedge and in common areas such as the chapel, hallways, jail intake, and holding cells, as well as the inmate housing areas.  The zero-tolerance policy will also be incorporated into the Jail's inmate intake orientation and the Inmate Handbook.  *Id.* ¶¶ 53-57.

### 4.  Measures to Address Inmate Sexual Misconduct

To curtail inmate sexual misconduct the following measures will be taken:

a.   The Jail will house gunners and those who sexually assault employees in a dedicated area for ninety (90) days and then release them to general population if they have not had another guilty finding of sexual misconduct.  Repeat gunners will return to the dedicated area for the remainder of their tenures at the Jail.  *Id.* ¶ 58(a);

b.  Inmates assigned to wear pink uniforms will do so anytime that they are housed at the Jail. *Id.* ¶ 58(a)(ii);

c.  One of the DHOs will be designated as the Inmate Sexual Misconduct Disciplinary Hearing Officer ("Inmate Sexual Misconduct DHO"), to coordinate implementing the Inmate Sexual Misconduct Policy.  *Id.* ¶ 58(b);

d.  DHOs shall receive additional training on investigating, evaluating, and disciplining inmates for sexual misconduct.  *Id.* ¶ 58(c); and

e.  The Inmate Sexual Misconduct DHO shall routinely review inmate gunning (*i.e.*, inmates masturbating directly at employees) and physical sexual assault reports and, where

7

warranted, refer those inmates for criminal prosecution.  *Id.* ¶ 58(d).

### C.  Continuing Jurisdiction and Duration of the Settlement Agreement

The proposed Settlement Agreement reflects the Parties' agreement to entry of its terms as an order of Court, with the Court retaining jurisdiction over this matter for the duration of the Agreement.  *Id.* ¶ 98.  Absent pending motions, the Agreement shall expire after the completion of the following: (1) the distribution of the Settlement Fund; and (2) 18 months after the Parties agree that all non-monetary relief set forth in the Agreement has been implemented.  *Id.* ¶¶ 98-100.

In light of the Parties' agreement on this front, "[c]ontinuing jurisdiction is the norm . . . ."  *See EEOC v. Prod. Fabricators*, 666 F.3d 1170, 1173 (8th Cir. 2012) (*citing Local No. 93, Int'l Assoc. of Firefighters v. Cleveland*, 478 U.S. 501, 524, n.13 (1986)).  District courts should consider "the strong preference for settlement agreements as a means of protecting the federal interest in employment discrimination cases" and "the fact that continuing jurisdiction is a usual component of such agreements, in part due to its deterrent effect."  *Id.* At 1174.  This deterrent effect of continuing jurisdiction is a critical tool for furthering the public interest, and the Department of Justice believes that the Court's exercise of continuing jurisdiction is warranted in this case in order to protect the public interest.

## IV.  APPROVAL PROCESS OF THE SETTLEMENT AGREEMENT

The Agreement, if provisionally approved, sets forth the schedule for notice and two fairness hearings—the Fairness Hearing on the Terms of the Settlement Agreement and the Fairness Hearing on Monetary Relief.

### A.  Fairness Hearing on the Terms of the Settlement Agreement

The Parties request that the Court schedule a Fairness Hearing on the Terms of the Settlement Agreement to determine whether the terms of the Agreement are fair, adequate, and reasonable.  To allow sufficient time for notice to affected individuals as well as objections and responses, the Parties request that the hearing be scheduled for a date that is at least 100 days after the date the Court provisionally approves the Agreement.  The Sheriff shall provide the last-known mailing address and e-mail addresses of individuals whose interests may be affected by the Agreement at least one hundred (100) days prior to the initial fairness hearing; and at least ninety (90) days prior to the hearing, a claims administrator, or in the alternative, the United States, will provide those persons with notice of and an opportunity to object to the terms of the Agreement.  Ex. A ¶¶ 28-29, 59.  No later than ten (10) days prior to the hearing, the United States shall file copies of all objections received, and the Parties shall file their responses, if any, to each timely objection.  The objections would be resolved at or after the fairness hearing.  The purpose of the fairness hearing and related notification provisions of the Agreement would be for the Court to determine whether the Agreement is fair, adequate, and reasonable, *United States v. City of New Orleans*, 947 F. Supp. 2d 601, 629 (E.D. La.), *aff'd*, 731 F.3d 434 (5th Cir. 2013); and "to provide persons who may be affected by the terms of the Agreement an opportunity to object prior to final entry of th[e] Agreement."  Ex. A ¶ 24.  As such, the "first place a court should look [in making that determination] is to the views" of those whose interests may be impacted by the Agreement. *Shuford v. Ala. State Bd. of Educ.*, 846 F. Supp. 1511, 1517 (M.D. Ala. 1994).  Courts must ensure "as a threshold matter that notice and fairness hearings [are] adequate to inform the class about the provisions of [a] decree and to solicit and determine their views."  *Id.*  Courts have found notice and fairness hearings to be sufficient where potential claimants are informed of the terms and

potential effect of proposed settlements on their interests, the time and place of fairness hearings and the opportunity and procedure for objecting to settlement agreements. *See Shuford v. Ala. State Bd. of Educ.*, 897 F. Supp. 1535, 1548 (M.D. Ala. 1995); *Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2013 WL 12481985, at *1 (W.D. Okla. Apr. 2, 2013). Here, if the Court finds that the Agreement is fair, adequate, and reasonable, it shall approve and enter the Agreement at or after the fairness hearing. Ex. A ¶ 33.

The timeline of actions related to the Fairness Hearing on the Settlement Agreement Terms are:

- Fairness Hearing on the Settlement Agreement Terms: At least **100 days** after the Court provisionally enters the Agreement. *Id.* ¶ 23.

- **100 days** before the Fairness Hearing on the Terms of the Settlement Agreement: The Sheriff shall provide the last-known mailing address and work and personal, where available, e-mail addresses of individuals whose interests may be affected by the Agreement. *Id.* ¶ 27.

- **90 days** before the Fairness Hearing on the Terms of the Settlement Agreement: The Claims Administrator (or the United States) shall give notice of the Agreement, the fairness hearing, and instructions and a form for objections, to parties whose interests may be affected. *Id.* ¶ 28.

- **45 days** before the Fairness Hearing on the Terms of the Settlement Agreement: Deadline for mailing objections to the terms of the Agreement to the Claims Administrator. *Id.* ¶ 30.

- **45 days** before the Fairness Hearing on the Terms of the Settlement Agreement: The Claims Administrator will provide the Parties, on a rolling weekly basis, with copies of the objections received.  *Id.* ¶ 31.

- **10 days** before the Fairness Hearing on the Terms of the Settlement Agreement: The United States shall file with the Court copies of all objections received, and the Parties shall file their responses to timely objections.  *Id.* ¶ 32.

- Date/Time to be determined by the Court:  Fairness Hearing on the Terms of the Settlement Agreement will be held.

- During or after the Fairness Hearing on the Terms of the Settlement Agreement: the Court shall enter the Agreement.  *Id.* ¶ 33.

### B.  Fairness Hearing on Monetary Relief

The Court's approval of the terms of the Settlement Agreement at or after the initial fairness hearing triggers a multi-step claims process for distribution of monetary relief to eligible, non-party female employees employed at the Jail between January 1, 2011 and April 21, 2023.  Ex. A ¶¶ 59-69.  In summary, persons interested in obtaining relief would submit an Interest-in-Relief Form.  *Id.* ¶ 61.  A claims administrator, or in the alternative, the United States, would review these submissions, make eligibility and proposed individual relief determinations, issue notice of the determinations, and provide an opportunity for interested persons to object to those determinations. *Id.* ¶¶ 66-69, 73-75.[2]  At or after the Fairness Hearing on Monetary Relief, the Court shall rule on objections and either approve as final the United States' proposed distribution of monetary relief,

---

[2]  Under the Agreement it is within the discretion of the United States to obtain the services of a Claims Administrator.  Ex. A ¶ 25.  If it opts not to do so, any obligation in the Agreement described as being performed by a Claims Administrator will be performed by the United States. *Id.*

or, if necessary, direct the Parties to make adjustments to proposed individual relief determinations consistent with the Court's ruling on any objections it deems well-founded. *Id.* ¶ 78. In the event that the Court requires adjustments to individual relief determinations, the United States shall submit an amended proposal within fifteen (15) days of the request and the Court shall thereafter approve the amended proposal as final. *Id.*

The timeline of actions related to the Fairness Hearing on Monetary Relief are:

- **30 days** after entry of the Agreement: The Claims Administrator will send via email and first-class U.S. mail the Notice of Final Entry of the Settlement Agreement and Interest-in-Relief Forms. *Id.* ¶ 60.

- **75 days** after final entry of the Agreement: Deadline for potential claimants to mail Interest-in-Relief Forms to the Claims Administrator. *Id.* ¶ 61.

- **85 days** after entry of the Agreement: The Claims Administrator shall provide the Parties with copies of all Interest-in-Relief Forms. *Id.* ¶ 63.

- **105 days** after entry of the Agreement: The Claims Administrator will provide its preliminary monetary relief determinations to the United States for final proposed determinations, subject to approval by the Court, regarding the eligibility and amount of each individual award. *Id.* ¶ 68.

- **135 days** after entry of the Agreement: The United States will identify to the Sheriff all eligible claimants and the proposed monetary awards for each, as well as all claimants the United States found to be ineligible for monetary relief. *Id.* ¶ 69.

- **150 days** after entry of the Agreement: The United States will file its Proposed Monetary Relief List with the Court, serve the same on the Sheriff, and move the

12

Court to schedule a Fairness Hearing on Monetary Relief and to provide the Parties at least 90 days' notice of the hearing.  *Id.* ¶¶ 70, 72.

- **90 days** before Fairness Hearing on Monetary Relief: The Court shall provide notice of the date and time set for the hearing.  *Id.* ¶ 72.

- **80 days** before Fairness Hearing on Monetary Relief:  The Claims Administrator will send notice of the hearing to all potential claimants who submitted Interest-in-Relief forms, as well as a cover letter relating to monetary relief determinations, instructions on objecting, and an objection form. *Id.* ¶ 73.

- **50 days** before the Fairness Hearing on Monetary Relief:  Deadline for potential claimants to submit objections to the Proposed Monetary Relief List.  *Id.* ¶ 75.

- **45 days** before the Fairness Hearing on Monetary Relief: The Claims Administrator shall serve on the Parties copies of all objections received.  *Id.* ¶ 76.

- **10 days** before the Fairness Hearing on Monetary Relief:  The United States shall file with the Court copies of all objections received and the Parties' responses to timely objections. *Id.* ¶ 77.

- Date/Time to be determined by the Court:  Fairness Hearing on Monetary Relief will be held.

- During or after the Fairness Hearing on Monetary Relief, the Court shall approve as final the Proposed Monetary Relief List.  *Id.* ¶ 78.

- If the Court determines that adjustments to the Proposed Monetary Relief List are necessary, within **15 days** of that determination the United States will file an Amended Proposed Monetary Relief List. Thereafter, the Court shall approve the Amended Proposed Monetary Relief List as final.  *Id.* ¶ 78.

## V.    ARGUMENT

### A.  Standard of Review

In evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the court does "not try the case in the settlement hearings." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citing *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971)). Instead, the Court should enter the Agreement if the settlement is fair, reasonable, and adequate. *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015) (citing *Cotton*, 559 F.2d at 1330). When assessing whether a proposed settlement agreement is fair, reasonable, and adequate, the Eleventh Circuit considers: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings at which settlement was reached; (4) the likelihood of success at trial; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *See Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Congress has placed a high premium on voluntary settlements of Title VII suits. *United States v. Miami*, 664 F.2d 435, 442 (5th Cir. 1981) (*en banc*). "Cooperation and voluntary compliance were selected as the preferred means of achieving" the goal of eliminating employment discrimination. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (identifying Title VII's conciliation provisions as evidence that Congress wanted Title VII compliance to be voluntary); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims."). Accordingly, a district court should have a "deferential attitude towards agreements reached by consent in Title VII suits." *United States v. Miami*, 614 F.2d 1322, 1333 (5th Cir.

14

1980).  This is particularly true where one of the plaintiffs is a department of the United States government.  *Id.*

Here, the Agreement is designed to address allegations of a long-standing pattern and practice of sexual harassment that has occurred at the Jail.  *See* Ex. A, Introduction.  Both the monetary relief and non-monetary relief terms of the Parties' proposed Agreement are clear, well-defined, and tailored to address and prevent future violations of Title VII.

**B.  The Settlement Agreement Is Fair, Adequate, Reasonable, and Consistent with Federal Law.**

Measured by the above factors, the proposed Agreement is fair, reasonable, and adequate. The Parties submit that the Court should provisionally approve the Agreement.  Should the Court have any concerns with the proposed Agreement, it should advise of those concerns and provide the Parties the opportunity to address them.  *United States v. Colorado*, 937 F. 2d 505, 509-10 (10th Cir. 1991) (citing *United States v. Miami,* 664 F.2d at 441).

1.  There is no fraud or collusion behind the settlement; it is the product of fair, arms-length negotiations.

The Court can be assured that "the interests of all affected have been considered."  *Miami*, 614 F.2d at 1332.  The Plaintiff is represented by the United States Department of Justice, a government agency entrusted with enforcing Title VII in the public interest.  Plaintiff-Intervenors are represented by experienced counsel, as is the Sheriff.  The Agreement is the product of extensive discussions and arms-length negotiations between and among all Parties over the course of several months, including several sessions with a private mediator, following months of extensive fact and expert discovery.  These facts weigh in favor of approval, as they evidence the absence of possible collusion or fraud.  Moreover, the Agreement seeks to address and prevent

employment discrimination by requiring certain specific actions be taken in compliance with Title VII, which furthers the public interest and is not illegal.

    2.  <u>The Complexity, Expense, and Likely Duration of Litigation Support Approval of the Settlement Agreement.</u>

The complexity and unpredictable outcome of this litigation also support approval of the Agreement. Title VII pattern or practice hostile work environment cases are complex, expensive, and time-consuming. To this point, the Parties have engaged in extensive fact and expert discovery, argument on a variety of issues, and *Daubert* challenges. Should this case proceed to trial, the Court has already ruled that the proceedings would be bifurcated into separate trials on liability and damages, and substantial issues remain to be resolved during the Phase I trial on liability. ECF No. 177; ECF No. 169. "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

If not settled, the Parties would continue intensive trial preparation for both Phase I and possibly Phase II, at substantial cost and risk to the Parties. Settlement avoids this cost and risk.

    3.  <u>The Stage of Proceedings Supports Approval of the Settlement Agreement.</u>

Courts look at this factor to ensure that "[p]laintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Swaney v. Regions Bank*, No. 2:13-CV-00544, 2020 WL 3064945, at \*5 (N.D. Ala. June 9, 2020) (internal citations omitted). Early settlements are encouraged, and only some amount of discovery is often required to determine whether the settlement is fair. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988).

In this case, extensive discovery, including expert discovery, has been completed, and at this stage of proceedings, each party is aware of the strengths and weaknesses of its evidence, arguments, and assertions, having developed a factual record from which to evaluate the respective benefits and risks associated with settlement versus trial. There is no surprise evidence that would alter the Parties' analyses, and the Parties have sufficient information to assess the merits of the case and to weigh the benefit of settlement prior to entering into the Agreement. The existence of this lengthy and fully developed record favors approval of the Agreement.

    4.  <u>Likelihood of Success at Trial.</u>

The Parties agreed in summary judgment briefing, and the Court later held, that there was no genuine dispute of material fact that Plaintiff-Intervenors and similarly situated female employees belong to a protected group, were subject to unwelcome sexual harassment by male inmates, and that the sexual harassment was based on sex. *See* ECF No. 177, PageID.2849 n.1; ECF No. 169, PageID.2830-2831. The Court held that a genuine dispute of material fact existed as to whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of a reasonable woman's employment in the same circumstances and whether the Sheriff took immediate and appropriate corrective action in response to the harassing behavior, of which he knew or reasonably should have known; Phase I trial would have resolved these issues. ECF No. 177, PageID.2849-2850.

The likelihood of success by Plaintiff and the Plaintiff-Intervenors at trial is "weighed against the amount and form of relief contained in the settlement." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1249 (S.D. Fla. 2016). Each side believes that it was positioned to prevail on the liability phase of trial absent settlement, and each side also recognizes that there was risk associated with trial given the depth of evidence each side had marshaled and was prepared to

present.  Moreover, pattern or practice hostile work environment cases very rarely reach trial, injecting an element of uncertainty into the proceedings.  Settlement of this action eliminates the risk for all Parties.

       5.    <u>The Settlement Is Within the Range of Recovery.</u>

The relief in the Agreement consists of non-monetary relief, such as revised policies regarding inmate sexual misconduct and training and communications with employees, as well as monetary payments to individuals.  Each of these remedies is a component of the make-whole relief authorized by Title VII.  *See* 42 U.S.C. § 1981A(a) (authorizing compensatory and punitive damages under Title VII); Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g) (authorizing courts to "enjoin the respondent from engaging in" an unlawful employment practice charged in the complaint).

The monetary relief of $2,020,000.00 is substantial and within the range of the potential recovery had this matter been litigated to conclusion.  It will provide some measure of financial restitution, even though it is less than what could be recovered were the case to proceed to trial and a verdict in favor of the Plaintiff and Plaintiff-Intervenors.  Furthermore, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate . . . the instant Settlement must be evaluated in light of the attendant risks with litigation."  *Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438, 2020 WL 5848620, at *6 (S.D. Fla. Oct. 1, 2020) (internal citations omitted).  Therefore, the relief is a reasonable compromise of the claims made by Plaintiff and Plaintiff-Intervenors.

18

6.      The Settlement Agreement Is Supported by Experienced Counsel, the Plaintiff-Intervenors, and the Sheriff.[3]

The United States is empowered by Congress to enforce Title VII. It does so through attorneys highly experienced in litigating and resolving Title VII pattern or practice matters such as the case before the Court. The private counsel representing the Plaintiff-Intervenors is also highly experienced at such litigation, having previously tried and resolved similar cases involving female employees subjected to sexual misconduct by male inmates against several correctional facilities. As experts in complex litigation and settlement negotiations, the lawyers for the Sheriff are well-suited to evaluate the risks associated with the trial of this case and to balance those risks against the terms of the Agreement. These attorneys and the Parties they represent have spent several years evaluating this case, including the time spent negotiating a fair settlement. Given the expertise and experience of all counsel and their agreement that this Agreement is an appropriate compromise, "the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). Accordingly, counsels' expertise and endorsement of the settlement weighs in favor of provisional entry of the Agreement.

## VI.     CONCLUSION

For the above reasons, the Parties respectfully request that the Court provisionally enter the proposed Agreement and set the time, date, and location of an initial fairness hearing.

Respectfully submitted this 21st day of April, 2023,

---

[3] An additional factor relevant to the Court's determination is the substance and amount of opposition to the settlement. *Leverso*, 18 F.3d at 1531 n.6. To date, the Parties are not aware of any opposition to the terms of the Agreement, and the Agreement itself contains a mechanism for formal objections to be evaluated by the Court.

For Plaintiff United States of America:

By:

KAREN D. WOODARD
*Chief*
*Employment Litigation Section*

MEREDITH L. BURRELL (MD Bar, no number issued)
*Principal Deputy Chief*

*/s/ Taryn Wilgus Null*
TARYN WILGUS NULL, DC Bar #985724
JULIET E. GRAY, DC Bar #985608
EMILY GIVEN, NY Bar #5420211
CATHERINE N. SELLERS, WA Bar #44563
SHARION SCOTT, DC Bar #1617438
ALICIA D. JOHNSON, DC Bar #494032
JULIA T. QUINN, DC Bar #1031695
*Trial Attorneys*
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E., Room 9.1139
Washington, DC 20530
Phone (cellular): (202) 532-3560 (Null)/
 (202) 598-1600 (Gray)/ (202) 532-5696 (Given)/ (202) 598-0696 (Sellers)/ (202) 598-5592
(Scott)/ (202) 532-5872 (Johnson)/ (202) 598-5171 (Quinn)
Facsimile: 202-514-1005
Taryn.Null@usdoj.gov
Juliet.Gray@usdoj.gov
Emily.Given@usdoj.gov
Catherine.Sellers@usdoj.gov
Sharion.Scott@usdoj.gov
Alicia.Johnson@usdoj.gov
Julia.Quinn@usdoj.gov

For the Sheriff:
*/s/ K. Paul Carbo, Jr.*
K. PAUL CARBO, JR. (CARBK8014)
MICHAEL M. LINDER (LINDM7310)
The Atchison Firm, P.C.
3030 Knollwood Drive
Mobile, Alabama 36693
Telephone: (251) 665-7200
Facsimile: (251) 665-7250
Email: paul.carbo@atchisonlaw.com
Email: michael.linder@atchisonlaw.com

*/s/ Stacy L. Moon*
Stacy L. Moon (asb-6468-i72s)
Gordon Rees Scully Mansukhani, LLP
420 20th Street North – Suite 2200
Birmingham, AL 35203
smoon@grsm.com
Phone: (205) 980-8200
Fax: (205) 383-2816

Attorneys for the Sheriff


For Plaintiff-Intervenors:

*/s/ John C. Davis*
JOHN C. DAVIS
Attorney for Plaintiff-Intervenors
Law Office of John C. Davis, Florida Bar # 827770
623 Beard Street
Tallahassee, FL 32303
Telephone: (850) 222-4770
Email: john@johndavislaw.net


*Counsel for the Sheriff and Plaintiff-Intervenors have consented to the filing of this document
with their electronic signatures affixed thereto.

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on April 21, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

      <u>*/s/ Taryn Wilgus Null*</u>
      Taryn Wilgus Null
      Senior Trial Attorney

22