**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| and | |
| MICHALE BURRELL, *et al.*, | |
| Intervenor Plaintiffs, | |
| v. | Civil Action No. 1:21-cv-00114-KD-N |
| MOBILE COUNTY SHERIFF PAUL BURCH<br>(in his official capacity), | |
| Defendant. | |

<u>**SETTLEMENT AGREEMENT**</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND BACKGROUND ...................................................................... 5

II.     PARTIES AND DEFINITIONS.................................................................................... 6

III.    PURPOSES OF THE SETTLEMENT AGREEMENT .................................................. 8

IV.     FAIRNESS HEARING ON THE TERMS OF THE SETTLEMENT AGREEMENT ..... 9

        A.      Provisional Entry of this Agreement........................................................ 9

        B.      Claims Administrator................................................................................ 9

        C.      Notice of Settlement .............................................................................. 10

        D.      Objections ............................................................................................. 11

        E.      Entry...................................................................................................... 12

V.      MONETARY SETTLEMENT AMOUNT.................................................................... 12

VI.     NON-MONETARY RELIEF ...................................................................................... 13

        A.      Policies on Inmate Sexual Misconduct .................................................. 14

        B.      Trainings and Communications with Employees ................................... 23

        C.      Notification to Inmates .......................................................................... 29

        D.      Measures to Address Inmate Sexual Misconduct ................................. 31

VII.    MONETARY RELIEF ............................................................................................... 39

        A.      Eligibility for Relief................................................................................. 39

        B.      Notice of Settlement Agreement to Claimants ...................................... 40

        C.      Claims Process for Monetary Relief ...................................................... 40

VIII.   FAIRNESS HEARING ON MONETARY RELIEF...................................................... 43

        A.      Filing of Proposed Monetary Relief List with the Court ........................ 43

        B.      Fairness Hearing on Monetary Relief .................................................... 43

        C.      Notice of Preliminary Eligibility Determinations to Claimants ............... 43

        D.      Objecting to Monetary Relief Determinations........................................ 44

        E.      Filing Objections to Monetary Relief ..................................................... 44

        F.      Approval of Monetary Relief List........................................................... 45

IX.     EXECUTION OF MONETARY RELIEF .................................................................... 45

        A.      Notice of Monetary Relief and Acceptance of Monetary Relief and Release of
                Claims ................................................................................................... 45

        B.      Acceptance of Monetary Relief ............................................................. 46

C.      Issuance of Monetary Payments by the Claims Administrator .............................. 48

X.      DISPUTE RESOLUTION ............................................................................................ 50

XI.     RECORD KEEPING, COMPLIANCE, AND MONITORING ...................................... 50

XII.    DURATION OF THE SETTLEMENT AGREEMENT ................................................... 52

XIII.   COSTS AND FEES ..................................................................................................... 53

XIV.    RETENTION OF JURISDICTION ............................................................................... 53

XV.     ADDITIONAL PROVISIONS ....................................................................................... 54

## ATTACHMENTS

| | |
|---|---|
| **ATTACHMENT A** | Notice of Settlement and Fairness Hearing, Instructions for Filing an Objection Prior to the Fairness Hearing |
| **ATTACHMENT B** | Cover Letter to Plaintiff-Intervenors |
| **ATTACHMENT C** | Plaintiff-Intervenors' Acceptance of Monetary Award and Release of Claims Form |
| **ATTACHMENT D** | Notice of Entry of Settlement Agreement |
| **ATTACHMENT E** | Cover Letter for Interest-in-Relief Form |
| **ATTACHMENT F** | Interest-in-Relief Form Notice, Instructions for Completing the Interest-in-Relief Form, and a Blank Interest-in-Relief Form |
| **ATTACHMENT G** | Cover Letter regarding Monetary Award Determinations and Providing Notice of Fairness Hearing on Monetary Relief, Instructions for Filing an Objection to Monetary Award, and Blank Objection Form |
| **ATTACHMENT H** | Notice of Monetary Award |
| **ATTACHMENT I** | Acceptance of Monteray Award and Release of Claims Form |

## I.      INTRODUCTION AND BACKGROUND

This action was brought by the United States against the Sheriff of Mobile County (the "Sheriff") to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Fourteen individual women who work or have worked for the Sheriff as corrections officers intervened in this action as Plaintiff-Intervenors.  This Court has jurisdiction over this action under 42 U.S.C. §§ 2000e-5(f), as well as 28 U.S.C. §§ 1331 and 1345.

In its amended complaint, the United States alleged, as a violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), that, since at least 2011, the Sheriff subjected the 14 Plaintiff-Intervenors and similarly situated female employees who work in the housing units at the Mobile County Metro Jail to harassment based on their sex.  The Parties do not dispute that male inmates have regularly exposed their genitalia to female employees, masturbated directly at female employees, and made graphic and sexually threatening comments to female employees.  The United States alleged that the inmates' behavior creates a hostile work environment as that term is defined by Title VII of the Civil Rights Act of 1964 and that the Sheriff did not take immediate and appropriate actions to respond to this behavior on the part of male inmates.  The Plaintiff-Intervenors' complaint asserted similar individual claims under Title VII.  The Sheriff denies that the behavior created a hostile work environment as that term is defined by Title VII of the Civil Rights Act of 1964 and that he failed to take reasonable and appropriate steps to respond to the male inmates' behavior.  The Sheriff denies all liability and violations of Title VII.

The Parties have met and conferred regarding the settlement of this case and desire to resolve the case without continued litigation.  The Parties agree to the jurisdiction of this Court over the Parties, and to entry of this settlement as an order of the Court.  Subject to the Court's

approval of this Settlement Agreement, the Parties waive findings of fact and conclusions of law on the merits of this case.

The Parties agree that the terms of this Settlement Agreement are fair, adequate, and reasonable.  The remedies in this Settlement Agreement are the result of compromise by the Parties.  This Settlement Agreement does not constitute and shall not be construed or interpreted as an admission of liability by the Sheriff.

The terms of the Settlement Agreement are as follows:

## II.   PARTIES AND DEFINITIONS

1.   The term "Claimant" means an individual who meets the requirements of Paragraph 59.

2.   The term "CO" means Corrections Officer.

3.   The term "Days" means "calendar days" unless otherwise specifically designated as "business days."  "Business days" excludes Saturdays, Sundays, and federal, state, and local holidays.  A business day is limited to the Jail's standard business hours on the final business day designated.

4.   The term "The Sheriff" means the Mobile County Sheriff in his official capacity.

5.   The term "DHO" means Disciplinary Hearing Officer.

6.   The term "Date of Entry" means the date the Court enters this Settlement Agreement as final pursuant to Paragraph 33.

7.   The term "Employee" or "Employees" means anyone the Sheriff hired, assigned, or promoted to work at the Jail, including both non-supervisory employees and supervisors.  "Employee" does not include any third-party contractor or vendor.

8.   The term "Gunning" means the act of an inmate exposing his genitals and/or

masturbating towards Jail employees.

9. The term "Inmate Handbook" means the document Jail employees distribute to inmates and utilize as a guide in their handling of inmates.

10. The term "Inmate Sexual Misconduct" means extreme forms of sexual harassment by male inmates, including inmates exposing their genitalia, masturbating directly at female employees (i.e., "gunning"), and making graphic and sexually threatening comments.

11. The term "Inmate Sexual Misconduct Policy" means the policy created to specifically address sexual misconduct by male inmates toward Jail employees. The policy defines the behaviors that are prohibited, Jail employees' rights in filing a report, Supervisor's responsibilities when receiving reports, and the Jail's mechanism for processing reports.

12. The term "Jail" means the Mobile County Metro Jail.

13. The term "Monetary Relief" means a monetary payment to a Plaintiff-Intervenor or a Claimant who returns an *Interest-in-Relief Form*.

14. The term "Parties" means the Plaintiff United States of America, by the Department of Justice ("United States"), Plaintiff-Intervenors, and the Mobile County Sheriff.

15. The term "Potential Claimant" means a female CO or Corporal who has worked at the Jail at any time between January 1, 2011 and April 21, 2023, and is not a Plaintiff-Intervenor.

16. The term "Plaintiff-Intervenors" refers to the fourteen (14) current and former Jail COs and Corporals who intervened in this lawsuit. They are Michale Burrell,

Manana Evans, Ella Finklea, Angela Garrett, Edwina Golston, Frankietta Horn, Mary James, Chasity Johnson, LaWanna Johnson, Larcenia Law, Nina Myrick, Christina Norwood, Lillian Sanders, and Kieyun Washington.

17.    The term "Records" means any papers, electronic files or writings of any kind, reports, studies, memoranda, letters, notes, charts, tables, rosters, manuals, guidelines, rules, lists, tabulations, press releases, books, articles, treatises, recordings or transcriptions of minutes, electronic files, machine readable format files, computer files, or audio or video recordings, electronic mail and facsimiles, and data, including source data and electronically stored data.

18.    The term "Settlement Fund" means the settlement monies of $1,410,000 set aside by the Sheriff pursuant to this Settlement Agreement, including any interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

19.    The term "Supervisors" means management employees that oversee the functions of inmate security, including, but not limited to, the warden, deputy warden, captains, lieutenants, and sergeants.

20.    The term "Title VII" means Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

## III.   PURPOSES OF THE SETTLEMENT AGREEMENT

21.    The purposes of this Settlement Agreement are to:

   a.   Implement effective and sustainable processes and operations that address inmates engaging in sexual harassment of Jail employees, including gunning and other sexual misconduct, directed at female Jail employees; and

b. Provide monetary compensation to Plaintiff-Intervenors and Claimants in resolution and settlement of the claims alleged by the Plaintiffs.

## IV.    FAIRNESS HEARING ON THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    Provisional Entry of this Agreement

22.    Upon execution of this Settlement Agreement by the Parties, the Parties shall jointly move for provisional entry of the Settlement Agreement by the Court and request a Fairness Hearing on the Terms of the Settlement Agreement.

23.    To provide the requisite notice described in Paragraph 28, the Parties request that the Court provide the Parties with at least one hundred (100) days' notice of the date and time set for the Fairness Hearing on the Terms of the Settlement Agreement.

24.    The purpose of the Fairness Hearing on the Terms of the Settlement Agreement and the related notification provisions described in this subsection is to provide persons who may be affected by the terms of the Settlement Agreement with notice and an opportunity to object prior to final Entry of this Settlement Agreement.

### B.    Claims Administrator

25.    The United States may opt to retain a Claims Administrator to assist with the notice and claims procedure for the distribution of monetary relief as set forth in this Settlement Agreement.  If the United States opts not to retain a Claims Administrator, any obligation described in this Settlement Agreement as being performed by a Claims Administrator will be performed by the United States.

26.    If the United States opts not to retain a Claims Administrator, the Sheriff will provide to the United States any information required by this Settlement Agreement to be provided to the Claims Administrator, and the Sheriff will

cooperate with the United States in the administration of the notice and claims process to the same degree that this Settlement Agreement requires cooperation with the Claims Administrator.

**C.**      **Notice of Settlement**

27.      No later than one hundred (100) days prior to the Fairness Hearing on the Terms of the Settlement Agreement, the Sheriff shall provide to the Claims Administrator and the United States the last-known mailing address, employment start and end dates (if applicable), and work and personal e-mail addresses, if they are in the Sheriff's possession, of each Potential Claimant.

28.      No later than ninety (90) days prior to the Fairness Hearing on the Terms of the Settlement Agreement, the Claims Administrator shall provide a copy of the *Notice of Settlement and Fairness Hearing* and *Instructions for Filing an Objection Prior to the Fairness Hearing* (collectively, "Notice Documents"), in a format materially the same as set forth in Attachment A, to each Potential Claimant, via email to the last-known email address and via first-class U.S. mail to the last-known mailing address.  The United States may also publish notice in publications and/or on the internet to alert Potential Claimants of the Fairness Hearing and opportunity to object.

29.      The Claims Administrator shall keep Records of all Notice Documents sent to Potential Claimants that are returned to the Claims Administrator as undeliverable, either by email or by U.S. mail.  If any Potential Claimants' Notice Documents are returned to the Claims Administrator as undeliverable, the Claims Administrator shall promptly notify the Parties.  The Parties shall attempt to identify updated

email addresses and/or mailing addresses as soon as practicable.  If one of the Parties identifies an alternative e-mail or mailing address, the Claims Administrator shall re-send the Notice Documents to the alternative address of the Potential Claimant within two (2) business days of identifying or being notified of the alternative address.

**D.**     **Objections**

30.   Persons who wish to object to the Settlement Agreement may file objections to the Claims Administrator, by no later than forty-five (45) days prior to the date set for the Fairness Hearing on the Terms of the Settlement Agreement and in accordance with the requirements set forth in the *Instructions for Filing an Objection Prior to the Fairness Hearing* in the Notice Documents.  Any person who fails to submit an objection by the deadline shall be deemed to have waived any right to object to the Settlement Agreement, except for good cause as determined by the United States.

31.   By no later than forty-five (45) days prior to the date set for the Fairness Hearing on the Terms of the Settlement Agreement, and on a rolling weekly basis thereafter (if necessary), the Claims Administrator shall serve upon the Parties copies of the objections it has received.

32.   No later than ten (10) days prior to the Fairness Hearing on the Terms of the Settlement Agreement, the Parties shall file with the Court:

   a.   copies of all objections received by the Claims Administrator, redacting the addresses, phone numbers, and email addresses of objectors; and

   b.   their responses, if any, to objections that were timely submitted to the Claims

Administrator in accordance with the deadline set forth in the *Instructions for Filing an Objection Prior to the Fairness Hearing*.

**E.    Entry**

33.    If the Court determines that the terms of the Settlement Agreement are fair, adequate, and reasonable, the Court shall approve and enter the Settlement Agreement at or after the Fairness Hearing on the Terms of the Settlement Agreement.

**V.    MONETARY SETTLEMENT AMOUNT**

34.    The Sheriff shall pay, or have paid on his behalf, a total of $2,020,000 in monetary relief to be distributed to Plaintiff-Intervenors and other similarly situated women who are Claimants under the terms of this Settlement Agreement.

a.    The settlement sum of $2,020,000 is payment in exchange for a full and final release on behalf of the Sheriff, as well as his insurers, successors, heirs, executors, and/or administrators, of and from all claims that were or could have been made within this litigation by Plaintiff-Intervenors and similarly situated women who accept relief under the settlement from all claims asserted in this case, as further detailed in Attachments C and I.

b.    Within ten (10) days of approval of the Settlement Agreement, the United States shall provide to the Sheriff account information for an account into which $1,410,000 will be deposited, by or on behalf of the Sheriff. This Settlement Fund will be allocated pursuant to the claims process set forth in Paragraphs 59-93 to compensate Claimants for any and all alleged injury arising from, or that might have arisen from, the claims asserted in this case.

    c.  The remaining $610,000 in monetary relief will be allocated to Plaintiff-Intervenors, who will each be awarded from such sum $35,000 as compensatory damages and an additional $8,571.43 toward their attorney's fees obligation to their counsel. The attorney's fees allotment shall be no more than a total of $120,000. Within twenty (20) days after the Date of Entry, each Plaintiff-Intervenor will execute an *Acceptance of Monetary Award and Release of Claims Form* ("*Acceptance*"), in a format materially the same as set forth in Attachment C.

35.    Within thirty (30) days after the Date of Entry, the Sheriff shall issue, or have issued on his behalf, a payment, via EFT, of $610,000 to the trust account of John Davis, counsel for the Plaintiff-Intervenors. Any money that remains unclaimed by Plaintiff-Intervenors will revert to the Settlement Fund established pursuant to Paragraph 34(b).

36.    Within thirty (30) days after the Date of Entry of this Settlement Agreement, the Sheriff shall deposit, or have deposited on his behalf, $1,410,000 into the account identified by the United States pursuant to Paragraph 34(b) to be distributed to Claimants.

## VI.   NON-MONETARY RELIEF

37.    The Sheriff will not fail to take immediate and appropriate corrective action to address inmate sexual misconduct towards female Jail employees and prevent the creation and maintenance of a hostile work environment at the Jail.

38.    The Sheriff shall not retaliate against any employee that opposes inmate sexual misconduct or participates in investigations related to inmate sexual misconduct

and the Jail's response to the sexual misconduct.  The Sheriff will not retaliate against any employee because they opposed the alleged discrimination at issue in this case; participated or cooperated in the investigation or litigation of this case; or seek relief or otherwise benefit from the terms of the settlement.

39.     As specified in Paragraphs 40-58 below, the Sheriff shall:

    a.  develop policies to provide that all inmates and employees are aware of the types of behavior that constitute inmate sexual misconduct, the sanctions that should be applied to inmates who engage in these behaviors, and the actions that Jail personnel should take in response to instances of inmate sexual misconduct;

    b.  provide notice to inmates and conduct trainings for Jail employees to inform them of new and/or updated policies regarding inmate sexual misconduct and provide procedures for use of Jail systems to address inmate sexual misconduct; and

    c.  implement procedures to address management of inmate sexual misconduct directed towards Jail employees and create mechanisms for Jail employees to provide feedback on the efficacy of such procedures.

**A.**     **Policies on Inmate Sexual Misconduct**

40.     Within forty-five (45) days of the Date of Entry, the Sheriff shall:

    a.  revise the Jail's policies, procedures, and/or guidelines on employee sexual harassment and equal opportunity rights to: (1) designate that inmate sexual misconduct constitutes sexual harassment of employees; and (2) expressly identify procedures employees can use to submit EEO complaints or

otherwise report workplace harassment that has not been adequately addressed and corrected by the Jail's inmate disciplinary system; and

b. provide the United States with the proposed policies and language described in Paragraph 40(a).  The United States will have fifteen (15) days to provide any written comments or proposed modifications.  Within fifteen (15) days of the Sheriff's receipt of the United States' comments or proposed modifications, the Parties shall confer to resolve any disputes.  If the Parties cannot agree, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute.

c. The Sheriff shall implement the final policy developed under this Paragraph within thirty (30) days of the Parties' agreement or judicial resolution, whichever is later.

41. No later than forty-five (45) days after the Date of Entry, the Sheriff shall provide the United States with a proposed Inmate Sexual Misconduct Policy and revised Inmate Handbook that will prohibit inmate sexual misconduct directed at Jail employees and describe how the Sheriff will respond to the conduct, as detailed in Paragraphs 42 and 45 below.  The Sheriff shall also provide the proposed summary document created under Paragraph 44 regarding the processes Jail employees will use to address and report inmate sexual misconduct.

42. At a minimum, the Sheriff's proposed Inmate Sexual Misconduct Policy must include:

a. Specific Prohibition Against Inmate Sexual Misconduct

i. The Sheriff shall state that the Jail has a zero-tolerance policy for inmate

15

sexual misconduct directed at Jail employees and describe the types of inmate behavior that constitute sexual misconduct.

   ii.  The Sheriff shall state that the Jail will post and distribute its Inmate Sexual Misconduct policy to all Jail employees.

b.  Detailed Offenses and Corresponding Consequences

   i.  The Sheriff shall list the types of behavior that constitute inmate sexual misconduct and the sanctions that should be applied for each violation.

   ii.  The list of behaviors and corresponding sanctions must include:

      1.  a statement that in addition to gunning and physical sexual assault of a Jail employee, inmate sexual misconduct also includes, but is not limited to, verbal harassment, sexualized name calling, sexual propositions, sexual threats, and touching;

      2.  a category for repeat violations and guidelines for how repeat offenses will be determined;

      3.  a description of the actions that Jail COs, corporals, and supervisors must take when experiencing prohibited conduct or observing prohibited conduct directed toward another Jail employee;

      4.  the possible sanctions that should be imposed by the Jail DHOs for each type of prohibited conduct; and

      5.  a statement that inmates who repeatedly engage in gunning and/or physical sexual assault against employees may be

referred for prosecution on criminal charges and that inmates found guilty of three misdemeanor offenses may be charged with a felony offense.  The Sheriff, however, cannot direct or guarantee charging or ultimate prosecution of such incidents.

c.  Employee Rights

    i.  The Sheriff shall detail the actions Jail employees must take when confronted with inmate sexual misconduct and their right to be free from retaliation or discouragement when filing a report of inmate sexual misconduct.

    ii.  The description of employee rights must include a statement that:

        1.  a Jail employee shall report inmate sexual misconduct using the disciplinary report form;

        2.  retaliation against a Jail employee making a report of inmate sexual misconduct is prohibited;

        3.  discouragement or dismissive comments related to a Jail employee filing a report of inmate sexual misconduct is prohibited;

        4.  all reports of sexual misconduct and retaliation by Jail employees directed at reporting employees will be promptly and fully investigated; and

        5.  Jail employees are entitled to know the outcome of disciplinary actions related to their report of inmate sexual misconduct and may use the process defined in Paragraph 58(c)(viii) below to

17

assess the status of their report.

d.   Reporting Mechanisms

    i.    The Sheriff shall define a process by which Jail employees can file a report of inmate sexual misconduct and track the status of the report after submission.

    ii.    The description of the reporting process shall include:

1. the manner(s) in which Jail employees must make a report of inmate sexual misconduct;

2. the substantive content that must be included in a disciplinary report regarding inmate sexual misconduct;

3. a statement that no one fact in the disciplinary narrative will be determinative of the outcome of the disciplinary investigation, including whether the Jail employee saw the inmate's exposed genitals or whether video footage was available;

4. the procedures that will be used to investigate reports of inmate sexual misconduct, and identification of the individual(s) who will conduct the investigation; and

5. a statement that the Sheriff will provide notification in writing, usually in the form of an email, to the reporting employee's jail email address, to provide the results of the investigation regarding inmate sexual misconduct, including any sanction or discipline issued, if any, and the rationale for the investigation outcome where the DHO entered a finding of not guilty.

e.  Supervisor Responsibilities

   i.  The Sheriff shall state the duties that Supervisors have in receiving, investigating, and forwarding reports of inmate sexual misconduct.

   ii.  The list of Supervisor duties shall include:

     1.  identification, by job title, of all individuals who are authorized to accept reports of inmate sexual misconduct;

     2.  a statement that it is a violation of Jail policy for Supervisors to make dismissive comments regarding the seriousness of inmate sexual misconduct, to discourage Jail employees from making a report of inmate sexual misconduct, or to retaliate against a reporting Jail employee for making a report;

     3.  a description of the actions Supervisors must take in response to observing or receiving a report of inmate sexual misconduct made by a Jail employee, in accordance with the actions defined pursuant to Paragraph 42(b)(ii)(3) above;

     4.  a statement that Supervisors designated by the Sheriff to receive such reports must provide any written reports of inmate sexual misconduct that they receive to the DHO by the close of the next business day; and

     5.  a statement that Supervisors who are required to report and/or investigate reports of inmate sexual misconduct, but fail to do so, are subject to discipline.

f.  Disciplinary Hearing Officer Responsibilities

    i.  The Sheriff shall create a job description, list of job duties, and set of guidelines for the DHO position.

    ii.  The description of DHO duties and responsibilities must include:

       1.  a description of the training requirements a new DHO must complete before assuming the role;

       2.  a list of the documents that a DHO must create and maintain as part of the inmate disciplinary process, including a description of the process for storing records;

       3.  a description of the factors a DHO must consider when investigating a report of inmate sexual misconduct, including, but not limited to, a requirement that the DHO:

          a.  consult the reporting officer for additional details on the incident if the DHO is considering a finding of not guilty due to a lack of detail in the report;

          b.  interview, if possible, all available witnesses to the alleged sexual misconduct, including the alleged offending inmate, other inmate witness(es) and Jail employee witness(es); and

          c.  review any available video footage that may capture the alleged inmate sexual misconduct.

       4.  a description of how a DHO should determine the applicable sanctions for each instance of inmate sexual misconduct,

including an upper and lower limit on sanction ranges, as detailed in the Inmate Handbook;

5. a requirement that the DHO provide a reporting Jail employee with notice of the outcome of disciplinary reports they file for inmate sexual misconduct as provided in Paragraph 58(c)(viii) below, usually by notification sent via email to the reporting Jail employee's Jail email address.

43. The United States will have fifteen (15) days to provide any written comments or proposed modifications to the Inmate Sexual Misconduct Policy submitted pursuant to Paragraph 41. Within fifteen (15) days of the Sheriff's receipt of the United States' comments or proposed modifications, the Parties shall confer to resolve any disputes.  If the Parties cannot agree, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute. The final policy developed under this Paragraph shall be implemented within thirty (30) days of the Parties' agreement or judicial resolution, whichever is later.

44. The Sheriff shall use the Inmate Sexual Misconduct Policy described in Paragraph 42 to create a summary of the process Jail employees should use to address and report inmate sexual misconduct.

a. The Sheriff shall circulate this summary document to all Jail employees via their Jail email addresses within five (5) business days of the non-supervisory employee training described in Paragraph 52(c) below.

b. The Sheriff shall post a copy of this summary document in areas frequented

by Jail employees, including shift briefing meeting rooms, break rooms, the pod in each wedge, and internal electronic systems (*i.e.* an employee webpage).

45. No later than forty-five (45) days after the Date of Entry, the Sheriff will revise the Inmate Handbook to define the behaviors that constitute inmate sexual misconduct and the consequences for engaging in these behaviors. At a minimum, the revisions to the Inmate Handbook shall include:

   a. A statement that the Jail has a zero-tolerance policy for inmate sexual misconduct toward Jail employees;

   b. A detailed list of the behaviors, including verbal harassment, that constitute inmate sexual misconduct;

   c. A description of the corresponding consequences for each of the inmate sexual misconduct behaviors, as defined pursuant to Paragraph 42(b) above;

   d. A statement that gunners and those who engage in physical sexual assault against employees will be housed in a dedicated area away from the general population, subject to the provisions of Paragraph 58 below;

   e. A statement that inmates who repeatedly engage in gunning and/or physical sexual assault against employees may be referred for prosecution on criminal charges, and that inmates who have been found guilty of three misdemeanor offenses may be charged with a felony offense and may be registered as a sex offender.   The Sheriff, however, cannot direct or guarantee charging or ultimate prosecution of such incidents.

46. The United States will have fifteen (15) days to provide any written comments or

proposed modifications to the proposed changes to the Inmate Handbook. Within fifteen (15) days of the Sheriff's receipt of the United States' comments or proposed modifications, the Parties shall confer to resolve any disputes. If the Parties cannot agree, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute. The final Handbook developed under this Paragraph shall be implemented within thirty (30) days of the Parties' agreement or judicial resolution, whichever is later.

47.   Prior to implementing updates or modifications to any of the policies described in Paragraphs 40, 42, and 45, the Sheriff shall provide the proposed changes to the United States for review. The United States will have fifteen (15) days to provide any written comments or proposed modifications. Within fifteen (15) days of the Sheriff's receipt of the United States' comments or proposed modifications, the Parties shall confer to resolve any disputes. If the Parties cannot agree, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute. The modifications developed under this Paragraph shall be implemented within thirty (30) days of the Parties' agreement or judicial resolution, whichever is later.

**B.    Trainings and Communications with Employees**

48.   Within thirty (30) days of the Sheriff's implementation of the Inmate Sexual Misconduct Policy described in Paragraph 42, the Sheriff shall submit to the United States for review and approval the proposed email notice to Jail employees and training materials, including any PowerPoint presentations or other materials, to be used during the trainings referred to in Paragraphs 52(a) and 52(c) below.

49.  The United States will have fifteen (15) days to provide any written comments or proposed modifications to the email notice language and training materials. Within fifteen (15) days of the Sheriff's receipt of the United States' comments or proposed modifications, the Parties shall confer to resolve any disputes.  If the Parties cannot agree, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute.

50.  Within five (5) business days of the Parties' agreement on the email notice language or judicial resolution, whichever is later, the Sheriff shall:

a.  Distribute to all Jail employees, via their employer-provided email addresses, a copy of the Inmate Sexual Misconduct Policy;

b.  Summarize in the text of the email:

   i.  the purpose of the Inmate Sexual Misconduct Policy, a general description of the types of inmate sexual misconduct that are covered, and the prohibition on retaliation for reports of inmate sexual misconduct;

   ii.  the mechanisms by which employees shall report inmate sexual misconduct;

   iii.  the duties of supervisors to report written reports of inmate sexual misconduct; and

   iv.  the prohibition against discouraging employees from reporting inmate sexual misconduct;

c.  Conspicuously post the text of the email in all Jail shift briefing rooms and break rooms.

51.   As required in Paragraph 52 below, the Sheriff shall provide training for all Jail employees on the Inmate Sexual Misconduct Policy and the Inmate Handbook. The required trainings shall be:

a.   Live (in-person or virtually), interactive, and include multiple instructional modalities;

b.   Recorded for use in future trainings at which the live instructor cannot be present;

c.   Continued on an annual basis for all Jail employees, to be completed by December 31st of each year.

    i.   All Jail employees who undergo the trainings referenced in Paragraphs 52 shall be required to sign an acknowledgement of their attendance at the training. The Jail shall retain the signed acknowledgements in a central location for this Settlement Agreement's duration.

    ii.   By January 31 of each calendar year during this Settlement Agreement's duration, the Sheriff shall provide to the United States:

        1.   Written verification that the prior year's annual trainings have been conducted and that the relevant Jail employees attended the trainings;

        2.   All signed acknowledgements signed during the prior year; and

        3.   A list of all Jail employees employed during the prior year to include any applicable dates of separation of employment during the calendar year.

    d.  Conducted by an outside, independent vendor for the initial training sessions described in Paragraphs 52(a) and 52(c) below.  The training vendor will be selected at the agreement of the Parties.  The trainer selection process shall proceed in the following manner:

        i.  Within ninety (90) days of the Date of Entry, Defendant shall propose to the United States a trainer with relevant expertise to conduct the trainings described in Paragraph 52.

        ii.  If the United States has objections to the trainer Defendant proposes, the United States shall provide its objections within fifteen (15) days of Defendant's proposal of the trainer. Within fifteen (15) days of Defendant's receipt of the United States' objections, the Parties shall confer to resolve any disputes.  If the Parties cannot agree, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute.

        iii.  Within thirty (30) days of the date that the United States approves the trainer referenced in the preceding paragraph or any objections are resolved, Defendant shall retain the trainer at its own expense.

52.    The trainings required under Paragraph 51 shall proceed as set out below:

    a.  Within ten (10) days of distribution of the email notice described in Paragraph 50, the Sheriff will initiate mandatory training for all current Jail wardens, captains, lieutenants, sergeants, and DHOs.  The training will be live and conducted by the trainer selected pursuant to Paragraph 51(d) above.  This training will educate the individuals on their responsibilities under the Jail's

policies prohibiting and correcting for inmate sexual misconduct, including a discussion of the applicable written policies described in Paragraphs 40, 42, and 45.  The training required by this subparagraph must be completed within sixty (60) days of the distribution of the email notice described in Paragraph 50.

b.  Defendant will provide the training referred to in Paragraph 52(a) to all individuals hired for or promoted to supervisory positions, including but not limited to, new wardens, captains, lieutenants, and sergeants.  This training does not have to conducted by a third-party trainer.  The Sheriff may utilize video tapes of prior training, along with training given by designated training officers using the same or similar material.  This training will be conducted within fifteen (15) business days of commencement of the position.

c.  Within ten (10) business days of distribution of the email notice described in Paragraph 50, the Sheriff will initiate mandatory training for all Jail non-supervisory employees and the DHOs to address the applicable written policies described in Paragraphs 40, 42, and 45.  The training will be live and conducted by the trainer selected pursuant to Paragraph 51(d) above and a high-level Supervisor such as the Warden, Deputy Warden, Captain, Lieutenant, or qualified Training Officer. The training required by this subparagraph must be completed for all required employees no later than forty-five (45) days after the distribution of the email notice described in Paragraph 50.  The training will, at a minimum:

   i.   educate the employees on the Jail's policies, procedures, and

27

guidelines prohibiting and correcting for inmate sexual misconduct, including a discussion of the written policies adopted by the Sheriff;

ii.     detail the different forms of inmate sexual misconduct, how they are defined, and the consequences for each type of conduct;

iii.     explain the responsibilities that Jail employees have when they witness an instance of inmate sexual misconduct, including steps the employee must take to immediately correct the behavior;

iv.     explain the process Jail employees should use to report an instance of inmate sexual misconduct, including:

    1.     the process for employees to submit forms, track the status of a report, or voice concerns about the processing of their report of inmate sexual misconduct;

    2.     the content that employees should include in an inmate disciplinary report;

    3.     an explanation that no one fact in the disciplinary narrative will be determinative of the outcome of a disciplinary investigation, including whether the Jail employee saw that inmate's exposed genitals or whether video footage was available;

    4.     an indication that the DHO will follow up with Jail employee for additional details on reports of inmate sexual misconduct where the DHO is considering a finding of not guilty; and

    5.     the process for Jail employees to receive the outcome of their inmate sexual misconduct report.

v.   explain that it is prohibited for anyone at the Jail to retaliate against an employee for making a report of inmate sexual misconduct and/or to discourage employees from filing a report of inmate sexual misconduct;

vi.   explain the function and operation of the Dedicated Housing Area created pursuant to Paragraph 58(a);

vii.   explain when and how inmates may be referred for criminal charges, as detailed in Paragraph 58(d); and

viii.   introduce the Inmate Sexual Misconduct Disciplinary Hearing Officer position created pursuant to Paragraph 58(b). The training will describe the functions of the Inmate Sexual Misconduct Disciplinary Hearing Officer and detail employees' ability to:

1.   obtain answers to questions about inmate sexual misconduct; and

2.   provide feedback on the response to inmate sexual misconduct.

d.   The Sheriff will provide the training referred to in Paragraph 52(c) to all new hires within fifteen (15) business days of the start of their employment with the Jail.  This training does not have to be conducted by a third-party trainer. The Sheriff may utilize video tapes of prior training, along with training given by designated training officers using the same or similar material.

**C.   Notification to Inmates**

53.   Within ten (10) business days of the Date of Entry the Sheriff will post a statement for inmates saying that the Jail has zero tolerance for inmate sexual misconduct.

This statement will be posted on the kiosk in each wedge and in common areas such as the chapel, hallways, jail intake, and holding cells, as well as the Dedicated Housing Area that the Jail currently has.

54. Within five (5) business days of posting the notices described in Paragraph 53, the Sheriff shall incorporate the zero-tolerance policy into the Jail's inmate intake orientation.

55. Within ten (10) days of the Sheriff's implementation of the Inmate Handbook described in Paragraph 45, the Sheriff will post the Inmate Handbook on the kiosk system.

56. If the Sheriff proposes any changes to the Inmate Sexual Misconduct Policy or Inmate Handbook pursuant to the revision process described in Paragraph 47 above, within thirty (30) days of the United States' approval of the updated policy language, the Sheriff will update all training materials referenced in Paragraph 48 and re-submit those materials to the United States for review under the process established in Paragraph 49.

57. The Sheriff will incorporate policy modifications and updated training materials developed under Paragraphs 47 and 56 into its ongoing training content for employees and notification to inmates.

   a. For any future changes to the Inmate Sexual Misconduct Policy, the Jail will:

      i.   use the updated content and materials in all ongoing trainings for Supervisors, non-supervisory employees, and the DHOs; and

      ii.  within thirty (30) days of the approved updated training materials, conduct a special, in-person training for Supervisors and non-

supervisory employees to explain the policy modifications and employees' corresponding obligations.

b. For any future changes to the Inmate Handbook, within thirty (30) days of the approved updated training materials, the Jail will distribute an updated Inmate Handbook and post the same on the kiosk system.

**D.    Measures to Address Inmate Sexual Misconduct**

58.    The Sheriff shall implement measures to curtail inmate sexual misconduct that shall include:

a. Dedicated Housing Area

i.   The Sheriff shall maintain the Dedicated Housing Area where the Jail currently houses gunners and those who engage in physical sexual assault of Jail employees.

ii.   Inmates will be assigned to the Dedicated Housing Area after they finish their assigned term in the administrative housing area.  If an inmate does not have another guilty finding of sexual misconduct after ninety (90) days in the Dedicated Housing Area, they may be released from the Area and returned to general population.  If an inmate returned to general population housing has another guilty finding of inmate sexual misconduct, they will be reassigned to the Dedicated Housing Area for the remainder of their tenure at the Jail.  Inmates who are assigned to wear a pink uniform will remain in a pink uniform throughout their tenure at the Jail, including any future returns to the Jail at a later date.

      iii.    The Sheriff can adjust the parameters of the Dedicated Housing Area to address exigencies or emergencies at the Jail that require attention before notice can be provided to the United States under Paragraph 58(a)(iv) below.  If such an exigency or emergency arises, the Sheriff will provide the United States with notice no later than ten (10) days after any changes are implemented to address such exigencies or emergencies.  The notice will describe the changes implemented by the Sheriff and how they affect the housing of inmates who were assigned to the Dedicated Housing Areas due to sexual misconduct toward Jail employees.

      iv.    If other (non-exigent, non-emergency) extenuating circumstances create a need to reallocate space at the Jail, the Sheriff can request, through its counsel, to confer with the United States about potential modifications to the Dedicated Housing Area.  The United States will make itself available for a telephone conference to discuss the potential modifications within ten (10) days of such a request.  If the Parties are unable to reach agreement after conferring, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute.

b.  Inmate Sexual Misconduct Disciplinary Hearing Officer

      i.    Within ten (10) business days of the implementation of the Inmate Sexual Misconduct Policy and the Inmate Handbook described in Paragraphs 42 and 45 above, the Jail shall designate one of the DHOs

as the Inmate Sexual Misconduct Disciplinary Hearing Officer ("Inmate Sexual Misconduct DHO"). In addition to their duties as a DHO, this person will be responsible for coordinating implementation of the Inmate Sexual Misconduct policy, assessing the efficacy of the policy's processes, and providing a channel for employees to offer feedback on the processes. The Inmate Sexual Misconduct DHO shall complete the same training as the other DHOs.

ii. The Inmate Sexual Misconduct DHO's responsibilities shall include, at a minimum:

1. promoting consistency in addressing inmate sexual misconduct;

2. providing that inmate sexual misconduct is addressed in shift briefings and other meetings;

3. managing the Jail's electronic tracking system for disciplinary reports on inmate sexual misconduct and verifying that all reports are processed, as guided by the Inmate Sexual Misconduct Policy;

4. electronically tracking reports alleging inmate sexual misconduct and the related outcomes of these reports;

5. reviewing specific incidents in which inmates alleged to have engaged in sexual misconduct towards Jail employees are found "not guilty" to determine whether further review or investigation is warranted;

6. identifying if there are elements of the disciplinary system that

are not sufficiently addressing inmate sexual misconduct and recommending to the Warden, Deputy Warden, or Captains options that could address the functioning of those elements;

7.  tracking when Supervisors are not timely submitting inmate sexual misconduct reports and notifying the Warden, Deputy Warden, or Captains when a Supervisor is not complying with the Jail's policies;

8.  troubleshooting, where possible, issues with the disciplinary process that may prevent the timely processing of an inmate sexual misconduct report.  Examples of these issues include, but are not limited to: the DHOs failing to receive a report, a report lacking sufficient narrative content to make a determination, or officers not receiving notice of the report outcome, as required under Paragraph 58(c)(viii); and

9.  facilitating Jail employees' ability to (1) utilize the reporting mechanisms established pursuant to Paragraph 42(d) above and (2) provide feedback on the Inmate Sexual Misconduct Policy processes and outcomes.  The Inmate Sexual Misconduct DHO shall support Jail Employees by:

    a.  answering questions about the policies and procedures applicable to addressing inmate sexual misconduct; and

    b.  administering an annual survey of COs and Corporals to assess the clarity and effectiveness of the Inmate Sexual

34

Misconduct Policy.

    i.  The United States shall propose the text of the survey sixty days (60) before the survey date. The Sheriff may also propose text for the survey. The Parties shall confer to resolve any disputes regarding the United States' proposed text;

    ii.  The survey shall be distributed to all COs and Corporals for at least two separate administrations while the Settlement Agreement remains in effect. The Parties shall agree on the dates for administering each survey to ensure that the dates of the survey administrations provide a sufficient amount of time to determine the effect of policy changes.

    iii.  Within five (5) business days of the survey's completion, the Sheriff will provide the United States with the survey responses. The United States may review the survey responses. If the United States finds that there are areas where the Jail can improve its alignment with the purposes of this Settlement Agreement, the United States can suggest actions for the Jail to address the survey results.

c.  Disciplinary System

    i.  The Sheriff shall appoint at least three (3) employees at the rank of

Sergeant or above to serve as Disciplinary Hearing Officers.

ii.    The Sheriff shall provide the DHOs with training, resources, and guidelines to provide consistency and continuity in evaluating inmate misconduct and imposing discipline.

iii.    Within fifteen (15) days of the non-supervisory employee training described in Paragraph 52(c) above, the trainer approved under Paragraph 51(d) shall provide all DHOs with additional training. The DHOs' training shall include, at a minimum, instruction on:

1. The types of behaviors that constitute sexual misconduct;

2. How to assess disciplinary report narratives to identify the key elements of sexual misconduct violations;

3. The corresponding consequences, including sanction ranges, for each sexual misconduct offense;

4. The use of progressive discipline, particularly for repeat offenders of sexual misconduct;

5. The process required for following up with Jail Employees if the DHO has questions about the disciplinary report narrative or is considering a finding of not guilty due to a lack of detail in the narrative; and

6. The process for providing Jail Employees notice of the outcome of their report of inmate sexual misconduct, as specified in Paragraph 58(c)(viii).

iv.    When a new DHO is selected, the person shall:

1.  complete field training in which they shadow a current DHO for at least fourteen (14) days; and

2.  complete the same training provided under Paragraph 58(c)(iii) above within fifteen (15) days of commencing the position.  This training does not have to be conducted by a third-party trainer.  The Sheriff may utilize video tapes of the prior third-party training, along with training given by designated training officers using the same or similar material.

v.  The Sheriff shall maintain electronic records of all reports of inmate sexual misconduct by utilizing a reporting system that enables Jail employees to:

1.  receive a report number for each disciplinary report form they complete; and

2.  submit their disciplinary report forms through a central system.

vi.  The Sheriff shall require that supervisors provide all written reports of inmate sexual misconduct to the DHO within one business day of receiving these reports, except in the case where the incident occurs on weekends or holidays and in that situation within one business day of the end of the weekend/holiday.

vii.  Within seven (7) days of the date a Jail employee files a report of inmate sexual misconduct, the DHO shall:

1.  Conduct an inmate disciplinary hearing;

2.  Issue a disciplinary determination that includes:

37

        a.   a finding of guilty or not guilty;

        b.   the reasons for the determination;

        c.   all evidence considered in making the determination;

        d.   the sanction imposed on the inmate for the rule violation; and

        e.   the factors the DHO considered when imposing the sanction.

3. Input the outcome of the sexual misconduct report into the Jail's reporting system; and

4. If applicable, notify the Classification Office that the inmate has been found guilty of a gunning offense or physical sexual assault of an employee.

viii. Jail employees shall be provided notice of the outcome of their report of Inmate Sexual Misconduct via the employee's Jail email address within five (5) days of the DHO making a final disposition of the employees' report.

d. Criminal Charges

i. On a quarterly basis, the Inmate Sexual Misconduct DHO shall review the disciplinary reports filed for gunning and physical sexual assault of a Jail employee to determine if a particular inmate is a repeat offender whose extreme sexual misconduct merits referral for criminal charges.

ii. In determining whether an inmate's repeated sexual misconduct

merits referral for criminal charges, the Inmate Sexual Misconduct DHO shall consider factors such as:

1. The frequency of the sexual misconduct;

2. The egregiousness of the sexual misconduct;

3. The inclusion of threats or other verbal harassment;

4. The presence or absence of physical touching; and

5. The number of officers who have filed reports against that inmate.

   iii. If the Inmate Sexual Misconduct DHO determines that an inmate should be referred for criminal charges, they shall provide the Deputy Warden with details on the inmate, documentation on the relevant sexual misconduct violations, and supporting evidence. The Deputy Warden will coordinate with the Sheriff's office in obtaining the necessary paperwork for the corrections officer, if they desire, to press charges. If the inmate has had three prior convictions, the matter will be referred to the Mobile County District Attorney's office to be processed as a felony.

## VII.  MONETARY RELIEF

### A.  <u>Eligibility for Relief</u>

59.  An individual will be deemed a Claimant and will be entitled to a monetary payment if she satisfies the following factors, and submits an *Interest-in-Relief Form* pursuant to Paragraph 61:

a. Is female;

b. Worked at the Jail at any time between January 1, 2011 and April 21, 2023;

    c.  Is not a Plaintiff-Intervenor;

    d.  Worked as an employee of the Jail as a corrections officer or corporal;

    e.  Experienced sexual misconduct from male inmates housed at the Jail while working in the inmate detention area; and

    f.  Was harmed by the sexual misconduct from male inmates.

**B.**    **Notice of Settlement Agreement to Claimants**

60.    No later than thirty (30) days after the Date of Entry of the Settlement Agreement, the Claims Administrator shall send to each Potential Claimant via email to the last-known email address and via first-class U.S. mail to the last-known mailing address a copy of the *Notice of Entry of Settlement Agreement* in a format materially the same as set forth in Attachment D; a *Cover Letter for the Interest-in-Relief Form* in a format materially the same as set forth in Attachment E; an *Interest-in-Relief Form Notice, Instructions for Completing the Interest-in-Relief Form*, a blank *Interest-in-Relief Form* in a format materially the same as set forth in Attachment F; and a return address envelope.

**C.**    **Claims Process for Monetary Relief**

61.    Any Potential Claimant who wishes to be considered for an award of Monetary Relief under this Settlement Agreement must return a completed *Interest-in-Relief Form* to the Claims Administrator in accordance with the requirements set forth in the *Instructions for Completing the Interest-in-Relief Form* and *Interest-in-Relief Form* no later than seventy-five (75) days after the Date of Entry.  Any Potential Claimant who fails to return an *Interest-in-Relief Form* by the deadline shall be deemed to have waived any right to be considered for an award of

Monetary Relief under this Settlement Agreement, except for good cause as determined by the United States.

62.     The names of people that submit Interest-in-Relief Forms shall be confidential. The Claims Administrator shall assign each Potential Claimant who returns an *Interest-in-Relief Form* a unique claimant identification number (Claimant ID).

63.     No later than ten (10) days after the deadline for submission of *Interest-in-Relief Forms* to the Claims Administrator (eighty-five (85) days after the Date of Entry), the Claims Administrator shall provide to the United States and the Sheriff copies of all *Interest-in-Relief Forms* received by the Claims Administrator.  At the same time, the Claims Administrator shall provide the United States and the Sheriff with the Claimant ID number assigned to each individual Potential Claimant by transfixing the claimant ID number onto the *Interest-in-Relief Form* and providing a list of all Potential Claimants who returned *Interest-in-Relief Forms* with their Claimant ID number, or by some other method mutually agreed to by the Claims Administrator and the United States.

64.     *Interest-in-Relief Forms* received by the Claims Administrator more than ten (10) days after the deadline for submission of claim forms will be provided to the United States and the Sheriff, along with Claimant ID numbers, on a weekly rolling basis. The submission date of each *Interest-in-Relief Form* shall be the date on which the form was e-mailed to the Claims Administrator, as determined by the e-mail date stamp, or the date on which the form was mailed to the Claims Administrator, as determined by the postmark.

65.     In the event the postmark is missing or illegible, the submission date of the

41

*Interest-in-Relief Form* shall be deemed to be five (5) days prior to the date the form was received by the Claims Administrator.

66.   In accordance with instructions provided by the United States, the Claims Administrator shall make a preliminary determination of whether a Potential Claimant is entitled to Monetary Relief pursuant to Paragraph 59 of this Settlement Agreement.

67.   For each Claimant preliminarily determined to be entitled to monetary relief, the Claims Administrator shall, in accordance with instructions provided by the United States, propose an amount for each Claimant's monetary payment from the Settlement Fund, such that all monies in the Settlement Fund are distributed as awards among all Claimants entitled to monetary relief.

68.   Within one hundred five (105) days from the Date of Entry of this Settlement Agreement, the Claims Administrator shall provide its preliminary determinations pursuant to Paragraphs 66 and 67 to the United States.  The United States shall evaluate the Claims Administrator's proposals and make final determinations regarding each Potential Claimant's eligibility for monetary relief and the amount of each eligible Claimant's monetary relief.  The United States' determinations will be made at its sole discretion, subject to approval by the Court, in accordance with the terms of this Settlement Agreement.

69.   Within one hundred thirty-five (135) days after the Date of Entry of this Settlement Agreement, the United States shall identify to the Sheriff all Claimants it finds entitled to receive monetary relief, as well as the amount of monetary relief that the United States has determined should be awarded to each Claimant, and all

Claimants it finds ineligible for Monetary Relief.

## VIII.  FAIRNESS HEARING ON MONETARY RELIEF

### A.  <u>Filing of Proposed Monetary Relief List with the Court</u>

70.  Within one hundred fifty (150) days after the Date of Entry of this Settlement Agreement, the United States shall file with the Court and serve upon the Sheriff a Proposed Monetary Relief List stating the amount of money that the United States has determined should be awarded to each Claimant found to be entitled to receive it.

71.  The Proposed Monetary Relief List shall identify each Claimant only by Claimant ID number.

### B.  <u>Fairness Hearing on Monetary Relief</u>

72.  Upon filing the Proposed Monetary Relief List, the United States shall simultaneously move the Court to hold a Fairness Hearing on Monetary Relief to allow the Court to determine whether the Proposed Monetary Relief List should be approved or amended.  In order to provide the requisite notice described in Paragraph 73, the Court shall provide the Parties with at least ninety (90) days' notice of the date and time set for the Fairness Hearing on Monetary Relief.

### C.  <u>Notice of Preliminary Eligibility Determinations to Claimants</u>

73.  No later than eighty (80) days before the date set for the Fairness Hearing on Monetary Relief, the Claims Administrator shall send to each Potential Claimant who submitted an *Interest-in-Relief Form* via e-mail to the last-known e-mail address, if available, and via first-class U.S. mail to the last-known mailing address the *Cover Letter regarding Monetary Award Determinations and Providing*

43

*Notice of Fairness Hearing on Monetary Relief* ("*Cover Letter on Monetary Relief*"), *Instructions for Filing an Objection to Monetary Award*, and *Objection Form*, (collectively, "Notice of Fairness Hearing on Monetary Relief Documents"), in a format materially the same as set forth in Attachment G.

74.   The Claims Administrator shall keep records of, and, if possible, shall re-send, all Notice of Fairness Hearing on Monetary Relief Documents returned as undeliverable by the same procedures described in Paragraph 29.

**D.   <u>Objecting to Monetary Relief Determinations</u>**

75.   A Claimant who wishes to object to the United States' Monetary Relief determination for herself as set out in the *Cover Letter on Monetary Relief* must file a written objection to the Claims Administrator in accordance with the requirements set forth in Attachment G no later than fifty (50) days before the Fairness Hearing on Monetary Relief.   Any Claimant who fails to submit an objection to the Claims Administrator by the deadline shall be deemed to have waived any right to object to her proposed Monetary Relief, except for good cause as determined by the United States.

76.   No later than forty-five (45) days prior to the Fairness Hearing on Monetary Relief, and on a rolling weekly basis thereafter (if necessary), the Claims Administrator shall serve on the Parties copies of the objections it has received.

**E.   <u>Filing Objections to Monetary Relief</u>**

77.   No later than ten (10) days prior to the Fairness Hearing on Monetary Relief:

a.   The United States shall file with the Court copies of all objections received by the Claims Administrator, redacting all identifying information of objectors,

other than Claimant ID number; and

b.  The Parties shall file its responses, if any, to all objections timely submitted to the Claims Administrator in accordance with the deadline.

**F.    Approval of Monetary Relief List**

78.   At or following the Fairness Hearing on Monetary Relief, the Court shall determine which, if any, objections to the Proposed Monetary Relief List are well-founded. The Court shall then approve the list as final or, if the Court finds that any objection(s) are well-founded, shall request that the Parties make any necessary adjustments to the list consistent with such findings.  In the event that the Court requires adjustments to the Proposed Monetary Relief List, the United States shall file an Amended Proposed Monetary Relief List within fifteen (15) days of the Court's determination that adjustments are necessary.  Thereafter, the Court shall approve the Amended Proposed Monetary Relief List as final.

79.   Once the Court approves a relief list as final, the approved list shall be deemed the Interim Monetary Relief List.

80.   Under no circumstances shall the Sheriff contribute additional money to the Settlement Fund or to Potential Claimants apart from the amounts designated in Paragraph 34 above.

**IX.   EXECUTION OF MONETARY RELIEF**

**A.    Notice of Monetary Relief and Acceptance of Monetary Relief and Release of Claims**

81.   Following the Fairness Hearing on Monetary Relief and the Court's approval of the Interim Monetary Relief List, the Claims Administrator will provide notice of the approval to each Claimant eligible for an award of monetary relief by sending,

via email and first class U.S. Mail, the following:  the *Notice of Monetary Award*, in a format materially the same as set forth in Attachment H, setting forth any monetary relief; and an *Acceptance of Monetary Award and Release of Claims Form* ("*Acceptance*"), in a format materially the same as set forth in Attachment I.  The Claims Administrator must send the notice required by this Paragraph no later than ten (10) days after the Court's approval of the Interim Monetary Relief List.

**B.    Acceptance of Monetary Relief**

82.    To receive a monetary award, a Claimant on the Interim Monetary Relief List must complete and return the *Acceptance* to the Claims Administrator no later than forty-five (45) days after the Court approves the Interim Monetary Relief List, in accordance with the requirements set forth in the form.  A Claimant's failure to return the *Acceptance* to the Claims Administrator by this deadline constitutes rejection of the monetary relief unless there is good cause for the failure to meet the deadline as determined by the United States.

83.    On a rolling basis and no later than fifty-five (55) days after the Court approves the Interim Monetary Relief List, the Claims Administrator shall forward to the Parties copies of all *Acceptances* it received from Claimants named in the Interim Monetary Relief List.  At the same time, the Claims Administrator shall provide the Parties with a list of all Claimants who submitted *Acceptances*, identifying

which Claimants submitted fully executed forms, as described in Paragraph 82, and which Claimants submitted forms that were not fully executed.

84. No later than fifty-five (55) days after the Court approves the Interim Monetary Relief List, the Claims Administrator shall provide notice to any Claimant who submitted forms that were not fully executed that her forms were deficient and must be corrected. This notice shall identify the deficiency the Claimant needs to correct.

85. Within seventy-five (75) days after the Court approves the Interim Monetary Relief List, Claimants whose *Acceptances* were not originally fully executed must provide any missing information. The failure of a Claimant to return fully executed forms to the Claims Administrator by this deadline shall constitute a rejection of the offer of a monetary award and shall release the Parties from any further obligation under the Settlement Agreement to make a monetary award to the Claimant. No later than three (3) business days after this deadline, the Claims Administrator shall provide the Parties with all of the returned *Acceptances*.

86. On a rolling basis and no later than eighty (80) days after the Court approves the Interim Monetary Relief List, the Claims Administrator shall provide the Parties with an updated list of all of the Claimants who submitted *Acceptances*, identifying which Claimants submitted fully executed forms and which Claimants submitted forms that were not fully executed.

87. No later than ninety (90) days after the Court approves the Interim Monetary Relief List, the United States shall provide the Sheriff and the Claims Administrator with a Final Monetary Relief List. The Final Monetary Relief List will redistribute

funds of Claimants who did not return fully executed *Acceptances* according to the requirements set forth above among the Claimants who did return fully executed *Acceptances* in a manner designed to preserve the relative proportions of Claimants' shares of the Settlement Fund.  The Final Monetary Relief List shall identify the amount of money to be paid from the Settlement Fund, including accrued interest, for each Claimant who timely returned a fully executed *Acceptance*.

### C.   Issuance of Monetary Payments by the Claims Administrator

88.   Within forty-five (45) days after the United States provides the Claims Administrator the Final Monetary Relief List, the Claims Administrator shall issue monetary payments as agreed to by the Parties by, among other actions, paying by EFT or mailing via certified U.S. mail (return receipt requested) a monetary payment check to each Claimant listed on the Final Monetary Relief List.

89.   The Claims Administrator shall keep Records of all monetary payment checks that are returned as undeliverable.  The Claims Administrator shall re-mail the monetary payment check returned as undeliverable by the same procedure as described in Paragraph 29.

90.   Within seventy-five (75) days after the United States provides the Final Monetary Relief List, the Claims Administrator shall provide the United States with a statement of the amount of monetary payment made to each Claimant and list of Claimants whose monetary payments are uncashed or otherwise still outstanding. The list of outstanding payments shall identify whose EFT payments have failed, whose checks appear to have been delivered (*i.e.*, not returned as undeliverable)

but have not yet been cashed, and whose checks have been returned to the Sheriff as undeliverable. The Claims Administrator shall also provide a statement of the amount of funds remaining in the Settlement Fund.

91. Within eighty-five (85) days after the United States provides the Final Monetary Relief List, the Claims Administrator shall notify Claimants with outstanding monetary payments via email and U.S. mail that their awards will be redistributed or reallocated if EFT payment issues are not resolved or if monetary payment checks are not cashed by a specified date that is one hundred eighty (180) days after issuance of payment.  The letter shall state that no further warnings regarding such distribution will be given.

92. Within two hundred thirty (230) days after the United States provides the Final Monetary Relief List, the Claims Administrator shall provide the United States with a list of all Claimants with outstanding monetary payments (*i.e.*, whose EFT payments failed or whose checks were returned as undeliverable and/or uncashed) and a statement of the amount remaining in the Settlement Fund.  Within two hundred forty (240) days after the United States provides the Final Monetary Relief List, the United States shall inform the Claims Administrator either that any funds remaining in the Settlement Fund should be reallocated among the other Claimants who are listed on the Final Monetary Relief List in a manner designed to preserve the relative proportions of their shares of the Settlement Fund, or, if the remaining funds are *de minimis*, that the remaining funds should not be reallocated among Claimants but rather the United States shall determine a manner of redistribution that is consistent with the purposes of the Settlement Agreement.

93.    The Claims Administrator will issue an IRS Form 1099 and any other appropriate tax form(s) for the monetary payments issued to Claimants.

## X.    DISPUTE RESOLUTION

94.    The Parties shall attempt in good faith to resolve informally any disputes concerning either Parties' compliance with this Settlement Agreement.  Upon request by any party, the Parties, through their counsel, will make themselves available for a telephone conference to discuss any such dispute within ten (10) days of such a request.  If the Parties are unable to reach agreement after informally seeking to resolve the dispute, either party may move the Court to enforce the disputed term of this Settlement Agreement, provided the moving Party gives at least thirty (30) days' written advance notice to the nonmoving Party.

## XI.    RECORD KEEPING, COMPLIANCE, AND MONITORING

95.    While the Settlement Agreement remains in effect, the Sheriff shall retain all of the following Records:

a.    All complaints or charges of employment discrimination at the Jail based on allegations of a sexual harassment by male inmates made against the Sheriff or its employees, agents or representatives: (a) internally; (b) with the United States Equal Employment Opportunity Commission; or (c) through or with any other federal or state agency authorized to receive such complaints;

b.    All Records generated as a result of implementation of the Inmate Sexual Misconduct Policy, Inmate Handbook, corresponding training materials, Jail employee or inmate notifications regarding the Inmate Sexual Misconduct Policy, Jail employee training rosters/training attendance records related to the Inmate Sexual Misconduct Policy, and documentation of notices to inmates to address the

50

Inmate Sexual Misconduct Policy; and

c.  All Records of inmate sexual misconduct reports, disciplinary investigations on these reports, final disciplinary determinations, or any other documents developed during the inmate disciplinary process.  The Sheriff will provide the United States with quarterly reports on the functioning of the disciplinary system and the Dedicated Housing Area.  These quarterly reports shall include:

    i.  a copy of all disciplinary reports for inmate sexual misconduct filed by Jail employees against male inmates during the preceding quarter;

    ii.  a statistical summary of the number of reports filed for inmate sexual misconduct. These statistics shall include:

        1.  the number of guilty findings, the number of not guilty findings, the number of reports that were not processed for reasons such as inmate release or expiration of the time period in which the Jail must hold a disciplinary hearing, and the reasons that the reports were unprocessed; and

        2.  the number of these inmate sexual misconduct reports that were filed for repeat offenders, the outcome (guilt, not guilty, unprocessed) for each of the reports on the repeat offenders, and the sanctions that were imposed for each guilty finding.

    iii.  a statistical summary of the number of reports filed for rule violations other than inmate sexual misconduct, the number of guilty findings, the number of not guilty findings, the number of reports that were not processed, and the reasons that they were unprocessed;

    iv.  the number of inmates added to the Dedicated Housing Area, the number of inmates released from the Area, and the number of inmates housed in the Area that reoffended.  The report shall also identify the consequences imposed for each of these reoffenders.

    v.  a report of how many inmates were referred for indecent exposure criminal charges during the prior quarter, whether warrant slips were issued, and the outcomes of the criminal charges.

96.    Except as otherwise provided in this Settlement Agreement, the Sheriff shall make available to the United States, no later than thirty (30) days after the United States so requests in writing, any non-privileged Records maintained in accordance with Paragraph 95 and any additional non-privileged Records reasonably relating to any dispute arising under this Settlement Agreement.

97.    The Sheriff shall promptly investigate all complaints of retaliation that, if true, would be prohibited by Paragraphs 38 and 42(c), and retain such complaints and investigations pursuant to Paragraph 95.

## XII.   DURATION OF THE SETTLEMENT AGREEMENT

98.    The Court shall retain jurisdiction of the non-monetary relief in this Settlement Agreement for a period of eighteen (18) months after the Parties agree that all of the non-monetary relief set forth in the Settlement Agreement has been fully implemented, but in no event shall the Court's retention extend beyond three (3) years from the Date of Entry.  When the Sheriff believes that all non-monetary relief has been fully implemented, he may provide written notice to the United States of that belief and that the eighteen (18) month period is running.  Within ten

(10) days of receipt of the Sheriff's written notice, the United States will provide a written response stating whether it agrees that the non-monetary relief has been implemented.  If the United States does not agree, it will identify in its written response the specific provisions of non-monetary relief in this Settlement Agreement that are outstanding.   If, after the notice and response process, the Parties cannot agree on whether the non-monetary relief has been fully implemented, either Party may invoke the dispute resolution procedure as provided in Paragraph 94 to seek judicial resolution of the dispute.

99.     At the end of the eighteen (18) month period described in Paragraph 98, the non-monetary terms of this Settlement Agreement will expire without further motion of the Parties or order of the Court.  Nothing in these provisions prohibits the United States from requesting an extension of the eighteen (18) month duration of jurisdiction over the non-monetary relief terms if it believes that the purposes defined in Paragraph 21 of this Settlement Agreement have not been met.

100.    The Settlement Agreement will expire in full without further motion of the Parties or order of the Court either at the end of the term of the Court's jurisdiction over non-monetary relief, or after all monetary relief provided for in this Settlement Agreement is fully implemented, whichever is later.

## XIII.  COSTS AND FEES

101.    The United States and the Sheriff shall bear their own costs, attorney's fees, and other expenses incurred in this action.

## XIV.  RETENTION OF JURISDICTION

102.    The Court shall retain jurisdiction over this Settlement Agreement for the purposes

of resolving any disputes or entering any orders that may be necessary to implement the relief provided herein until the obligations set forth in Paragraphs 98-100 have been met.

## XV.   ADDITIONAL PROVISIONS

103.   The time limits set forth throughout this Settlement Agreement may be changed upon mutual consent of the Parties and notice to the Court, or upon motion to the Court following written notice to the other Party provided 30 days in advance of filing an anticipated motion.

104.   The submission date of any document by Potential Claimants, Claimants, or objectors shall be the date on which the document was emailed to the United States, as determined by the email date stamp, or the date on which the document was mailed to the United States, as determined by the postmark.  In the event the postmark is missing or illegible, the Parties shall determine whether the submission is timely by examining other documents received by the United States and comparing the postmark dates of those documents and the document with the missing or illegible postmark.

105.   If any deadline referenced in this Settlement Agreement falls on a weekend or federal holiday, the deadline shall be moved to the next business day.

106.   This Settlement Agreement constitutes the entire agreement of the Parties, and supersedes all prior agreements, representations, negotiations, promises and understandings, whether oral or written, express or implied, with respect to the terms of this Settlement Agreement.  Each Party represents, warranties, and covenants that it has the full legal authority to enter into this Settlement Agreement

and to perform the obligations set forth herein.

107.   Unless the parties have agreed in writing otherwise, all documents required to be delivered under this Settlement Agreement by the Sheriff to the United States shall be sent electronically to taryn.null@usdoj.gov.   Where electronic mail is not possible, documents shall be sent via overnight delivery service:

> Taryn Wilgus Null/202-616-3874
> Employment Litigation Section/Civil Rights Division
> 4 Constitution Square
> 150 M Street NE / Room 9.143
> Washington, D.C.  20002

108.   Unless the parties have agreed in writing otherwise, all documents required to be delivered under this Settlement Agreement by the United States to the Sheriff shall be sent electronically to paul.carbo@atchisonlaw.com.   Where electronic mail is not possible, documents shall be sent to the following mailing address:

> K. Paul Carbo, Jr.
> 411 Azalea Road
> Mobile, AL 36609

109.   Any Party may update recipients as well as mailing or electronic addresses set forth in Paragraphs 107 and 108 to the other Party without requiring any changes to this Consent Settlement Agreement.

110.   If any provision of this Settlement Agreement is found to be unlawful, only the specific provision in question shall be affected, and the other provisions will remain in full force and effect.

It is so ORDERED this _____day of _____, 2023.

_____
KRISTI K. DUBOSE
District Court Judge
U.S. District Court

**AGREED AND CONSENTED TO:**

For Plaintiff United States of America:

By:

KAREN D. WOODARD
*Chief*
*Employment Litigation Section*

MEREDITH L. BURRELL (MD Bar, no
number issued)
*Principal Deputy Chief*

*/s/ Taryn Wilgus Null*
TARYN WILGUS NULL, DC Bar #985724
JULIET E. GRAY, DC Bar #985608
EMILY GIVEN, NY Bar #5420211
CATHERINE N. SELLERS, WA Bar
#44563
SHARION SCOTT, DC Bar #1617438
ALICIA D. JOHNSON, DC Bar #494032
JULIA T. QUINN, DC Bar #1031695
*Trial Attorneys*
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E., Room 9.1139
Washington, DC 20530
Phone (cellular): (202) 532-3560 (Null)/
 (202) 598-1600 (Gray)/ (202) 532-5696
(Given)/ (202) 598-0696 (Sellers)/ (202)
598-5592 (Scott)/ (202) 532-5872
(Johnson)/ (202) 598-5171 (Quinn)
Facsimile: 202-514-1005
Taryn.Null@usdoj.gov
Juliet.Gray@usdoj.gov
Emily.Given@usdoj.gov
Catherine.Sellers@usdoj.gov
Sharion.Scott@usdoj.gov
Alicia.Johnson@usdoj.gov
Julia.Quinn@usdoj.gov

For the Sheriff:

*/s/ K. Paul Carbo, Jr.*
K. PAUL CARBO, JR. (CARBK8014)
MICHAEL M. LINDER (LINDM7310)
The Atchison Firm, P.C.
3030 Knollwood Drive
Mobile, Alabama 36693
Telephone: (251) 665-7200
Facsimile: (251) 665-7250
Email: paul.carbo@atchisonlaw.com
Email: michael.linder@atchisonlaw.com

*/s/ Stacy L. Moon*
Stacy L. Moon (asb-6468-i72s)
Gordon Reed Scully Mansukhani, LLP
420 20th Street North – Suite 2200
Birmingham, AL 35203
smoon@grsm.com
Phone: (205) 980-8200
Fax: (205) 383-2816

Attorneys for the Sheriff

For Plaintiff-Intervenors:

*/s/ John C. Davis*
JOHN C. DAVIS
Attorney for Plaintiff-Intervenors
Law Office of John C. Davis, Florida Bar # 827770
623 Beard Street
Tallahassee, FL 32303
Telephone: (850) 222-4770
Email: john@johndavislaw.net

*Counsel for the Sheriff and Plaintiff-Intervenors have consented to the filing of this document with their electronic signatures affixed thereto.

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

  <u>/s/ Taryn Wilgus Null</u>
Taryn Wilgus Null
Senior Trial Attorney
